752 So.2d 841 (2000)
Victor C. BENWARE
v.
Jesse MEANS, Jr. and Lloyds Underwriters at London.
No. 99-C-1410.
Supreme Court of Louisiana.
January 19, 2000.
*843 James Ronald Clary, Jr., Eric Todd Hebert, Baton Rouge, Counsel for Applicant.
Stephen M. Whitlow, Jesse Lafayette Means, Jr., Keogh, Cox & Wilson, Baton Rouge, Counsel for Respondent.
LEMMON, Justice.[*]
This is a legal malpractice action based on the failure of an attorney (Jesse Means, the defendant in the present action) to take any step for five years in the prosecution of an earlier worker's compensation suit he had filed on behalf of his client (the plaintiff in the present action). This failure allegedly resulted in the dismissal of the underlying compensation suit.
After plaintiff filed this malpractice action, there were several pre-trial or status conferences and several continuances of trial dates. Eventually, plaintiff's attorney filed a motion for sanctions based on Means's total failure to comply with his obligations imposed by the court for the preparation of the pre-trial order. The trial judge granted the motion and prohibited Means from calling witnesses and offering evidence at the subsequent trial, which resulted in a judgment against Means.
The principal issue in this court is whether the trial judge abused his discretion in imposing this harsh sanction under the circumstances of this case.

Facts
On March 27, 1982, plaintiff was injured on the job as a prison guard at the Louisiana State Penitentiary. His employer paid worker's compensation benefits from the date of the accident until March 1983. Believing he was entitled to additional benefits, plaintiff retained Means to represent him, and Means filed a timely suit on behalf of plaintiff. After the employer answered and filed discovery into the record, Means took no further action in the suit. On September 10, 1993, judgment was rendered dismissing the worker's compensation suit for lack of prosecution for five years.
On July 8, 1994, plaintiff, through another attorney, filed this legal malpractice action against Means and his alleged insurer (who was subsequently dismissed because the negligent conduct predated the coverage). Plaintiff alleged that the dismissal of his worker's compensation suit resulted in the loss of 121 additional weeks of benefits. He also sought attorney's fees, penalties and unpaid medical expenses.
Means answered, denying the allegations on the basis that plaintiff had discharged him and secured another attorney before the five-year period expired. Means also filed a third party demand against the other attorney allegedly hired by plaintiff.
The trial judge (a retired judge assigned to hear this case on an ad hoc basis) scheduled a status conference on July 29, 1996, but neither Means nor his attorney appeared.[1] On August 12, 1996, a scheduling order was issued setting forth the deadlines imposed by the judge at the status conference for filing all motions, for completing discovery, for amending pleadings, and for preparing, circulating and signing the pre-trial order that would control the course of the litigation. The scheduling order specified that the parties must prepare, circulate and sign the pre-trial order, in accordance with local court *844 rules, that the pre-trial order must be exchanged by November 8, 1996, and that the completed pre-trial order must be filed by November 19.
Means failed, despite numerous requests, to provide opposing counsel with the information regarding his contentions, his witnesses or his exhibits, which the local court rules required each party to provide to plaintiffs counsel, who had the responsibility under the local court rules to complete the pre-trial order. On November 12, plaintiffs counsel wrote to Means and again requested inserts for the pre-trial order, which was due to be filed on November 19.
On November 22, the trial judge held a second status conference, attended by Means, by counsel for plaintiff, and by counsel for third party defendant. At this conference, the judge continued the December 10, 1996 trial date, and the parties agreed to confer for the purpose of selecting a new trial date in January 1997. Means also agreed to file the missing pre-trial order inserts by December 10.
After the two represented parties were unable to contact Means, they conferred with the trial judge and selected March 31, 1997 for the trial date. On December 10, counsel for plaintiff notified Means of the trial date and again requested inserts for the pre-trial order, but Means did not provide the inserts and did not object to the March 31 trial date.
On December 17, counsel for plaintiff submitted the incomplete pre-trial order to the court, without any inserts from Means. Counsel for plaintiff mailed a copy of the pre-trial order to Means, who did not object to the order or to the March 31 trial date of which he had previously been notified.
On January 21, 1997 counsel for plaintiff wrote to Means, requesting the long overdue pre-trial order inserts and emphasizing the approaching March 31 trial date, but Means did not respond.
On February 7, 1997, counsel for plaintiff and counsel for third party defendant filed a joint motion to impose sanctions upon Means by circumscribing Means's calling of witnesses and introduction of evidence. Movers alleged that the action was necessary because of Means's "arbitrary, capricious and contemporaneous failure ... to cooperate in any meaningful or substantive way with the pre-trial procedure ordered by" the trial judge and required by local court rules. Movers further alleged that Means, despite numerous amicable requests, failed to submit any pre-trial order inserts within the two deadlines fixed by the court or at any subsequent time, and that the trial date of March 31, 1997 was fast approaching. Attached to the motion were copies of the original scheduling order and of several letters from plaintiffs counsel to Means, requesting the information ordered by the trial court. The judge fixed the motion for hearing on the date of trial.
Means was personally served by the sheriff with the motion, which contained the trial date. Nevertheless, Means failed to file the information ordered by the court or to object in any manner to the motion or to the trial date.
On March 20, 1997, Means filed a subpoena duces tecum for certain of plaintiff's income tax and financial records pertinent to the period of time for which plaintiff was seeking recovery of damages based on loss of compensation benefits. The next day, Means filed a request for written notice of trial and a motion to upset the March 31 trial date, to set aside previous time limitations, and to set a pre-trial conference and new dates for pre-trial procedures and for trial.
On March 31, 1997, the trial judge denied Means's March 20 and 21 motions, noting that Means had "more than ample time" to comply with the pre-trial procedures ordered by the court. After a hearing on plaintiffs motion to circumscribe, the judge granted the motion and rendered a separate judgment, prohibiting *845 Means from maintaining any defense contentions, introducing any evidence, or calling any witnesses at trial.
The judge then proceeded to conduct the trial on the merits, at which Means was allowed to cross-examine the witnesses. Concluding that plaintiff most likely would have prevailed in the worker's compensation action but for Means's neglect, the judge rendered judgment in favor of plaintiff and against Means in the amount of $50,000. The judgment also dismissed Means's third party demand.
On Means's appeal, the court of appeal in an unpublished opinion reversed the trial court's ruling on the motion to circumscribe. 98-0203, 738 So.2d 204 (La. App. 1st Cir.2/23/99). The court noted that no previous appellate opinion had approved such a harsh sanction for failure to submit pre-trial order inserts. Relying on Boudreaux v. Yancey, 256 So.2d 340 (La. App. 1st Cir.1971), in which a judgment dismissing the suit for failure to appear at a pre-trial conference was reversed, the intermediate court held that the trial court's judgment on the motion to circumscribe in the present case was an abuse of discretion. The court further observed that the penalty imposed was not warranted by either La.Code Civ. Proc. art. 193, which permits the adoption of court rules, or by La.Code Civ. Proc. art. 1551, which at the time of trial outlined pre-trial procedures but did not then specify appropriate sanctions.
Based on its conclusion that Means had been denied the opportunity to present a defense at trial, the court of appeal also reversed the judgment of the trial court on the merits and remanded the matter for a new trial.
This court granted plaintiff's application for certiorari to review the decisions of the lower courts on the motion to circumscribe, which was the only issue decided by the court of appeal. 99-1410 (La.9/17/99), 747 So.2d 554.

Pre-Trial Procedures and Penalties
Louisiana has had a statutory pre-trial conference procedure since 1950. See former La.Rev.Stat. 13:5151. The purpose of the pre-trial conference is to promote the speedy and just disposition of the case. One of the major functions of the pre-trial conference is to require disclosure of all witnesses and evidence that the parties intend to use at trial, thereby facilitating trial preparation and preventing surprise and prejudice.
Pre-trial conferences reduce unnecessary proof of facts at trial, as well as a litigant's opportunity to create traps or surprises. When the litigants participate in good faith in pre-trial proceedings, settlements are facilitated and costs to litigants are reduced. 62 Am.Jur.2d Pretrial Conference and Procedure § 2 (1999); Walter W. Jones, Jr., Annotation, Consideration or Submission at Trial, Under Rule 16 of Federal Rules of Civil Procedure, of Issues Not Fixed for Trial in Pretrial Order, 11 A.L.R. Fed. 786 (1999). Because the pre-trial conference is an invaluable tool for promoting a fair and speedy trial and aiding in the reduction of the court's backlog of cases, pre-trial orders must be strictly adhered to by the parties.
La.Code Civ. Proc. art. 1551 presently authorizes district courts to conduct pre-trial conferences and mandates that, if a conference is conducted, the judge must render a pre-trial order to control the subsequent course of the action, as follows:
A. In any civil action in a district court the court may in its discretion direct the attorneys for the parties to appear before it for conferences to consider any of the following:
(1) The simplification of the issues, including the elimination of frivolous claims or defenses.
(2) The necessity or desirability of amendments to the pleadings.
(3) What material facts and issues exist without substantial controversy, and *846 what material facts and issues are actually and in good faith controverted.
(4) Proof, stipulations regarding the authenticity of documents, and advance rulings from the court on the admissibility of evidence.
(5) Limitations or restrictions on or regulation of the use of expert testimony under Louisiana Code of Evidence Article 702.
(6) The control and scheduling of discovery.
(7) The identification of witnesses, documents, and exhibits.
(8) Such other matters as may aid in the disposition of the action.
B. The court shall render an order which recites the action taken at the conference, the amendments allowed to the pleadings, and the agreements made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreements of counsel. Such order controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice.
C. If a party's attorney fails to obey a pretrial order, or to appear at the pretrial and scheduling conference, or is substantially unprepared to participate in the conference or fails to participate in good faith, the court, on its own motion or on the motion of a party, after hearing, may make such orders as are just, including orders provided in Article 1471(2), (3), and (4). In lieu of or in addition to any other sanction, the court may require the party or the attorney representing the party or both to pay the reasonable expenses incurred by noncompliance with this Paragraph, including attorney fees.
A 1997 amendment to Subsection A expanded the provisions from the original Code of 1961 to the present form, quoted above, and added Subsection C, which for the first time specifically provides for sanctions for failure to appear or to participate in good faith in pre-trial proceedings.[2]
Subsection C refers to the sanctions listed in La.Code Civ. Proc. art. 1471(2), (3) and (4), which provide:
If a party or an officer, director, or managing agent of a party or a person designated under Articles 1442 or 1448 to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under Article 1469 or Article 1464, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
. . .
(2) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence.
(3) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.
(4) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination.
Thus, Article 1551C, which incorporated Article 1471(2) and (3), now authorizes the "death penalty" of dismissal or judgment by default in appropriate cases of disobedience of or disregard for orders pertaining to pre-trial procedure. However, this extreme penalty obviously should seldom be imposed and should be reserved for only the most flagrant case.

*847 Appropriateness of Penalty in the Present Case

When a court determines the appropriate penalty for disobedience of or disregard for court orders relating to pretrial procedures, one important consideration is whether the misconduct was by the attorney or the client, or both. In Horton v. McCary, 635 So.2d 199 (La. 1994), this court reversed a sanction that granted a default judgment against a defendant whose attorney failed to comply with discovery orders issued by the trial judge. In so ruling, this court emphasized that "[b]oth dismissal and default are draconian penalties which should be applied only in extreme circumstances." Id. at 203; see also Barnhill v. United States, 11 F.3d 1360 (7th Cir.1993); Allen v. Smith, 390 So.2d 1300 (La.1980). Generally, such sanctions are proper only for the most culpable conduct in which the client, as well as the attorney, participated in the offense. Horton, 635 So.2d at 203. Noting that the trial transcript contained no evidence that the clients participated in violating the trial court's order, this court observed that this extreme penalty, depriving the litigant of his day in court, was too harsh a result for the litigant's attorney's neglect.[3]
While this court in Horton suggested that this most extreme penalty was almost never to be imposed upon a litigant, the court did not say "never." Courts seldom invoke the most extreme sanctions except when there is a gross disregard for the authority and the efficient operation of the court and for the attorney's professional obligation to his or her client. See J.A. Bryant, Jr., Annotation, Failure of Party or His Attorney to Appear at Pretrial Conference, 55 A.L.R.3d 303 (1999). Each case must be decided upon its own facts and circumstances, and the trial judge is vested with much discretion in determining the penalty for violation of pre-trial or discovery orders.
Other important considerations in determining the appropriateness of the penalty for a pre-trial order violation, in addition to the question of whether the client participated in the violation, are the stage of the proceeding at which the violation occurred, the presence or absence of prejudice to the opposing party's preparation of the case, and the nature and persistency of the misconduct that constitutes the violation.
A litigant's attorney's non-excusable failure to attend a pre-trial conference at an early stage of the proceeding clearly must be punished if the court is going to maintain control of the proceeding and efficiently and expeditiously dispose of cases; however, the penalty for such a violation obviously should be less than one for repeated violations over a period of time that persistently obstruct the progress of the case and prevent the opposing attorneys from advancing the case and properly preparing for trial.
The court of appeal in the present case relied on the decision in Boudreaux v. Yancey, 256 So.2d 340 (La.App. 1st Cir. 1971), in which the court reversed the trial judge's dismissal of the plaintiffs action for failure of the plaintiffs counsel to appear for the pre-trial conference. The court of appeal in Boudreaux reasoned that the dismissal was not authorized at the time by La.Code Civ. Proc. arts. 193 or 1551. Id. at 342. Furthermore, the court did not indicate that the client participated in the violation in any manner.[4]
*848 Likewise, in Davis v. Byrd Mem'l Hosp., 628 So.2d 1284 (La.App. 3d Cir.1993), the court vacated the trial judge's dismissal of the plaintiffs' action for failure to comply with both a discovery order and a pre-trial order. The court noted that the record contained no evidence of willful disobedience by the plaintiffs and that the plaintiffs' attorney was the only offending party. Thus, although the trial judge has much discretion in imposing sanctions for failure to comply with discovery or pretrial orders, the court held that the trial judge abused that discretion. Id. at 1287.
In the present case, Means filed the worker's compensation action in August 1983 and then did nothing. After being sued for legal malpractice in July 1994, Means filed an answer and third party demand, but again did nothing. Means was ordered by the court to provide his pre-trial order inserts first by November 8, 1996 and then by December 10, 1996, and he failed to do so even as late as the day of trial on March 31, 1997. His willful and continued disregard for his responsibilities obstructed the entire course of the pre-trial procedure, prevented the opposing attorneys from preparing properly for trial, and would have considerably disrupted the court's docket but for the fact that the case was tried by an ad hoc judge. Also noteworthy is the fact that Means is an attorney who was representing himself in proper person; this is not the case of an unknowing and vulnerable client who may be unjustly harmed by a penalty arising from the failure of his attorney to respond to court-ordered pretrial procedures.
While it is understandable that Means was not anxious to be cast in judgment for damages resulting from his virtually undisputed legal malpractice, the trial judge simply could not allow Means to unilaterally and continuously obstruct the movement of the case to trial. Means's repeated and willful acts of disobedience in failing to comply with the trial court's orders rendered appropriate the drastic sanctions imposed by the trial judge. This is precisely the "rare" case this court contemplated as appropriate for imposition of the harshest penalty. The trial court did not err in granting the motion to circumscribe and imposing penalties appropriate under the facts of this case.

Notice of Trial
Means complains that he did not receive a formal notice of trial from the clerk of court. Means argues that the local court rules require that cases be assigned for trial on written motion and order filed with the court, or by oral motion in open court. The concurring judge in the intermediate court, while disagreeing with the majority's conclusion that the trial judge abused his discretion in ordering an extreme sanction, agreed with the majority's reversal of the trial court's judgment on the merits based on the lack of formal notice.
The local court rules cited by Means do not require formal notice of trial, but merely prescribe the usual procedure for obtaining a trial date.[5] However, some form of notice of trial is, of course, a due process requirement.
In the present case, Means had numerous notices, formal and informal, of the March 31 trial date. At the November 22, 1996 status conference (at which time Means had already ignored the November deadline imposed by the court for supplying his part of the information for the pretrial order), Means was ordered to consult with the two opposing attorneys to select a January 1997 trial date. According to *849 those attorneys, Means failed to respond to their attempts to select an agreeable trial date (which was in line with his persistent course of conduct), and they, together with the judge, selected the March 31 date. Plaintiffs counsel immediately advised Means by letter of the trial date.
Concededly, the clerk did not provide a notice of trial. However, the fixing of the March 31 trial date was in response to the trial judge's order to the attorneys to select a mutually agreeable date, and the judge (although he did not understand why a notice of trial had not been sent by the clerk) was satisfied that Means, who resisted participation in the selection of the date, was adequately notified several times, well in advance of trial, and was not prejudiced by any lack of a formal notice.
Of course, the normal procedure for fixing a trial date is for a party to file a motion and the judge to select and fix the date. In that situation, formal notice of the trial date (not agreed upon by the attorneys) is clearly necessary. However, less formality is required when the parties themselves select a trial date, at least in the absence of prejudice to any party.
Means clearly was not prejudiced by the informal fixing of the trial date in this case. Means admittedly received December 10, 1996 and January 21, 1997 letters from plaintiffs counsel advising of the trial date. He also received a copy of the incomplete pre-trial order, but did nothing to supply the missing information or to object to the trial date. Means was also personally served with the January 7, 1997 motion to circumscribe, which specified the trial date and requested drastic sanctions, but made no response or objections.
Means's March 20 subpoena duces tecum, requesting information relevant only to the trial on the merits and not to the hearing on the motion to circumscribe, indicated his knowledge of and lack of objection or indifference to the trial date. His motion on the following day to set aside the trial date and, in effect, to restart pretrial procedures was the last in a long line of obstructive tactics, both passive and active. Most significantly, Means at no time, either in pleadings, argument or evidence, established any prejudice caused by the absence of a formal notice.[6] Until just before trial, he never objected to the trial date that was known to him; he issued a subpoena duces tecum for evidence pertinent only to the trial on the merits; and he appeared on the morning of trial, offering no good faith explanation for his failures in the pre-trial proceedings. He did not deny receiving the various notices of trial, but only complained that he did not agree to the trial date. All of the prejudice suffered by Means was of his own making.
While the absence of a formal notice of trial may in many cases require corrective measures by a reviewing court, this is not such a case.

Decree
Accordingly, the portion of the judgment of the court of appeal reversing the trial court's judgment that granted the motion to circumscribe is reversed, and the judgment of trial court on the motion to circumscribe is reinstated. The portion of the judgment of the court of appeal vacating the judgment of the trial court on the merits is set aside, and the case is remanded to the court of appeal for review of that judgment.
NOTES
[*] Johnson, J., not on panel. Rule IV, Part 2, § 3.
[1] Means's counsel filed a motion to withdraw in June 1996. Although the motion was not signed until October 1996, Means has, in effect, represented himself since June 1996.
[2] The sanctions in the present case were imposed before the effective date of La.Code Civ. Proc. art. 1551C. Nevertheless, the trial judge clearly had the authority to impose penalties for violations of court orders regarding pre-trial procedures.
[3] As this court noted in Horton, 635 So.2d at 203, federal courts, before granting a default order, consider four factors: (1) willfulness of the offending party in refusing to comply; (2) whether less harsh penalties are effective; (3) whether the opposing party's trial preparation was prejudiced by the offense; and (4) whether the client participated in the offense. Batson v. Neal Spelce Assoc., Inc., 765 F.2d 511 (5th Cir.1985).
[4] We agree with the decision in Boudreaux v. Yancey, supra, that dismissal of the litigant's action for the litigant's attorney's failure to attend an early pre-trial conference is an abuse of discretion. The misconduct should have been appropriately sanctioned by imposing a penalty on the attorney, including payment of the opposing litigants' expenses caused by the noncompliance.
[5] The ad hoc judge in the present case, at the status conference in which the trial date was upset, authorized the parties to select a mutually agreeable date for resetting the trial.
[6] The judgment of the trial court on the motion to circumscribe was the damaging event to Means. Even if the trial judge had granted Means' motion to continue (which was the most relief Means could have been entitled to because of lack of formal notice) and reset a new trial date with formal notice, Means would not have been allowed to call witnesses or present evidence.