847 So.2d 639 (2003)
Larry BROOKS
v.
SEWERAGE AND WATER BOARD OF NEW ORLEANS.
No. 2002-CA-2246.
Court of Appeal of Louisiana, Fourth Circuit.
April 30, 2003.
*640 Robert T. Hughes, New Orleans, LA, for Plaintiff/Appellee.
John D, Lambert, Jr., Special Counsel, Jacob Taranto, II, Assistant Special Counsel, Mary-Elizabeth Paltron, General Counsel, Sewerage & Water Board of New Orleans, New Orleans, LA, for Defendant/Appellant.
Court composed of Judge JOAN BERNARD ARMSTRONG, Judge MAX N. TOBIAS JR., Judge LEON A. CANNIZZARO JR.
*641 MAX N. TOBIAS JR., Judge.
The defendant-appellant, Sewerage and Water Board of New Orleans ("the Board"), seeks review of an evidentiary ruling of the lower court. The lower court ruled that the Board's witnesses would not be allowed to testify at trial because the Board failed to file a witness list as required by the court's trial order.

STATEMENT OF THE CASE
On 20 April 1998, the plaintiff-appellee, Larry Brooks ("Brooks"), allegedly injured his left leg when he stepped into an uncovered water meter hole located directly in front of his apartment on Sere Street in New Orleans. Brooks' petition was filed on 13 April 1999 against the Board, a public body, alleging negligence and asserting that Board employees were performing work on the water meters at his address on the day of the accident.
A pre-trial conference was held on 11 December 2000, setting a deadline for the plaintiff to file a witness list by 16 January 2001 and the defendant to file a witness list by 29 January 2001; all discovery was to be completed by 9 February 2001. The trial date was set for 2 April 2001. On 2 April 2001, the trial was continued to 5 September 2001, and the former trial order was amended, requiring the plaintiff to file a witness list by 7 May 2001 and the defendant to file a witness list by 29 May 2001. All discovery was to be completed by the new date of 18 June 2001 and the trial was reset for 5 September 2001. At the trial of 5 September 2001, after Brooks had completed his case in chief and the court asked for the Board to call its first witness, an objection was made to the testimony of the Board's witnesses due to the Board's failure to file a witness list.[1]
After a discussion between the attorneys and the trial judge in an attempt to resolve the issue, the trial judge excluded the testimony of the Board's witnesses at the trial, but permitted the Board to proffer the testimony of their witnesses. The court held the case open to allow the Board the opportunity to take the depositions of its witnesses and to proffer the depositions.[2]
Thus, the trial on the merits was conducted without any witnesses presented by the Board. Brooks presented testimony of David Blair, an eyewitness to his accident and injury. Mr. Blair corroborated Brooks' testimony that on the morning of the accident the Board's employees were working at the accident site. On the issue of damages, Brooks' medical records were stipulated to and introduced into evidence. The records supported the finding of the trial judge that Brooks' fall caused an aggravation of a pre-existing injury. Metal screws, which had been inserted into *642 Brooks' left knee in a previous surgery, were loosened as a result of this accident, causing pain and necessitating an additional surgery. Judgment on the merits was rendered in favor of Brooks, awarding him $125,000.00 in general damages and $3,339.00 in medical expenses, together with costs and legal interest; the lien of the Veterans Administration for $2,719.00 was also recognized. This appeal followed.
The assignments of error before this court involve the trial court's exclusion of the Board's evidence.[3] The Board specifically argues that the trial order should have been modified in order to prevent manifest injustice. In support of this position, it cites La. C.C.P. art. 1551, which states, in pertinent part:
B. The court shall render an order which recites the action taken at the conference, the amendments allowed to the pleadings, and the agreements made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreements of counsel. Such order controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice. [Emphasis added].
The effect of the trial court's evidentiary ruling, as argued by the Board, was to prevent the Board from presenting its case, thereby causing manifest injustice.
The Board contends further that the decision of the trial court was inappropriate, as it penalized the client when the client's fault was not an issue.[4] The Board cites several cases for the position that when sanctions are imposed for the disregard of a pre-trial (or trial) order, the court must consider whether the misconduct was committed by the attorney, the client, or both. Benware v. Means, 99-1410 (La.1/19/02), 752 So.2d 841; Horton v. McCary, 93-2315 (La.4/11/94), 635 So.2d 199. The Board points out that no showing has been made of willfulness, bad faith, or fault on the part of the Board in the failure to submit the witness list. It therefore argues that the client in this case should not be penalized for the error of its attorney.
Brooks argues, however, that the trial court was correct in upholding the provisions of the trial order, pointing out that the Board was twice given in writing the opportunity to submit a list of witnesses, but failed to do so. He stresses the fact that the identities of the Board's witnesses were not provided until the morning of trial, thus denying him the opportunity to depose them.
Brooks further asserts that although La. C.C.P. art. 1551 allows for the modification of a trial order to prevent manifest injustice, such a modification is left up to the discretion of the trial judge. Further, he submits that this discretion must be exercised to prevent substantial injustice to the parties who relied on the trial order. Benware, supra; Zanca v. Exhibition Contractors Co., 614 So.2d 325 (La.App. 4 Cir. 1993). Brooks contends that statements made by the trial judge during the trial *643 indicate that the judge was of the opinion that allowing the witnesses to testify would have resulted in manifest injustice to Brooks' case.

DISCUSSION
The well-established standard of appellate review to be applied in case dictates that this court may not overturn the judgment of the lower court absent an error of law or finding of fact that is manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993).
Our courts have consistently stated that the theory inherent in pre-trial procedure is to avoid surprise and to permit an orderly disposition of the case. Eanes v. McKnight, 262 La. 915, 265 So.2d 220, 227 (1972); Zanca, supra. It is also well recognized that the trial judge has wide discretion to implement a pre-trial or trial order and to insure that its terms are enforced. Wells v. Gillette, 620 So.2d 301 (La.App. 4 Cir.1993); Zanca, supra. The trial court is also provided wide discretion in determining whether or not to modify a pre-trial or trial order. Neff v. Rose, 546 So.2d 480 (La.App. 4 Cir.1989); Wells, supra.
It is clear from the transcript in this case, that the trial judge weighed the positions of both parties in trying to arrive at an appropriate solution. Ultimately, it was ruled that Brooks was entitled to know the identity of the witnesses and the substance of their testimony in advance of the trial. To let the witnesses testify, the trial court noted, would have been unfair considering that Brooks had not been given an opportunity to depose the Board's witnesses.
We find the ruling of the trial court to be reasonable, especially in light of the written requirement of the trial order, twice given, requiring that each party file a witness list by a date certain. It was not an abuse of discretion, under these circumstances, for the trial court to enforce the trial order in an attempt to prevent an injustice to the party who relied upon and followed that order in preparing for trial.
Although the cases relating to penalizing a party for failure to adhere to court orders cited by the Board do recognize the importance of determining whether the client was the one responsible for violating the trial order, it is not the only consideration. As the Louisiana Supreme Court stated:
Other important considerations in determining the appropriateness of the penalty for a pre-trial order violation, in addition to the question of whether the client participated in the violation, are the stage of the proceeding at which the violation occurred, the presence or absence of prejudice to the opposing party's preparation of the case, and the nature and persistency of the misconduct that constitutes the violation.
Benware, 99-1410, p. 10, 752 So.2d at 847.
When viewing the present case in light of the "other important considerations," it is apparent that the trial court did not abuse its discretion. The Board was given a written trial order that specifically required each party to file a list of witnesses with the court by a date certain. The trial order was amended again giving counsel a date certain by which a witness list had to be filed with the court. Two discovery cut-off dates were specifically given. Neither the list nor the identity of the witnesses was provided to Brooks (or his counsel) until the morning of trial, thereby prejudicing his ability to prepare his case.
Finally we note that the Board equates the sanction imposed here with that of a dismissal and, being a severe *644 penalty, should only be used in extreme circumstances. We are of the opinion, however, that the sanction imposed by the trial court is distinguishable from that of an outright dismissal. Brooks was still required to put on evidence to prove causation and damages, which he did. The Board was also offered the opportunity to apply to this court for a supervisory writ, (which it failed to do) and/or to proffer the deposition testimony of the excluded witnesses. The Board chose the latter. This court finds the ruling of the trial court to be reasonable.
We note that on the morning of trial, before Brooks presented his case, the trial judge and counsel discussed the case. We would assume that the Board's counsel indicated in the conference that the Board intended to call witnesses and, by implication, Brooks' counsel failed to inform the trial judge at that time that he would object to the Board calling any witnesses because of the failure to file a witness list. Such may have deprived the Board of an opportunity to move for a continuance before the trial commenced. The trial court could then have (a) considered whether it would grant the continuance, (b) ordered that the trial proceed but the matter be held open for the Board to present its case at a later date, (c) required the Board's case be presented exclusively on depositions to be submitted later, or (d) strictly enforced its trial order. However, nothing in the record on appeal establishes what was discussed in the pre-trial conference, and it is inappropriate for us to speculate under the circumstances of this case what was discussed. The Board did not specifically ask that the trial court consider the proffered evidence when it filed its motion for new trial, but the Board in its supplemental brief analyzes the proffered evidence and asks this court to consider it. The trial court said:
And as a proffer, and then deliver it to the Court in an envelope marked proffer. That way, you know, once it's submitted to me, obviously, I'm not going to read it. I'm going to render a decision based on what I have in front of me. And then the Court of Appeals [sic] can decide whether I'm right or wrong and they can order me to read them. They can do whatever they decide. I think that's probably [a] better thing to do because it won't delays things as long. [Emphasis supplied.]
We have reviewed the proffered evidence. Although the proffered evidence would at first blush appear to refute Brooks' version of the facts, a detailed analysis does not refute the possibility that Brooks was injured as a result of the negligence of the Board's employees associated with work performed at the site where Brooks claims he was injured. Accordingly, we do not find the judgment in this case to be either manifestly erroneous or clearly wrong.

CONCLUSION
Based upon the facts of the case at bar as established by the record on appeal, this court concludes that the trial court's evidentiary ruling refusing to permit the testimony of the Board's witnesses is not an abuse of discretion and not manifestly erroneous. We do not find that the proffered evidence would change the outcome of this case. Accordingly, we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] We find no evidence in the record on appeal that the Board's witnesses were ever disclosed to Brooks' counsel prior to 5 September 2001. It is apparent, however, that counsel for the parties discussed the case with the trial judge prior to the commencement of trial, and, by implication, Brooks' counsel did not raise during that conference an objection to the Board calling any witness for any reason whatsoever.
[2] The Board deposed three witnesses on 8 October 2001 and on 12 October 2001 submitted their testimony together with documents referenced in their testimony as a proffer. The trial court signed a judgment on 4 April 2002. On 15 April 2002, the Board filed a motion for new trial; the motion was denied on 17 April 2002 without a hearing, and the court noted:

"The court allowed counsel the opportunity to proffer the excluded testimony. The depositions were taken after trial. Counsel was obligated by the court's trial order to include a list of witnesses." Nowhere in either the motion for new trial or its accompanying memorandum of law does the Board ask for consideration of the proffered evidence.
[3] We note that in its original brief filed with this court the Board does not assign as error, assert, or argue that the proffered evidence should be considered or reviewed for purposes of this appeal. The Board only noted that the proffered evidence would show that the Board was performing no work at the time and place claimed by Brooks. Subsequently, after the Brooks filed a response brief, the Board filed a "Motion for Permission to File Supplemental, Reply Brief." However, the Board did not file a "Reply Brief." Instead, they filed a supplemental brief that addresses that which in their opinion the proffered evidence establishes.
[4] We note that the Board's counsel is its in-house counsel.