BELSOME, J.,
concurs in part and dissents in part and assigns reasons.
_|_¡AU seamen aboard the M/V MARIKA perished when the vessel disappeared in a bitter North Atlantic winter storm. As a result of the majority’s decision, the widows and orphaned children of the seamen aboard the M/V MARIKA will forever lose their day in court, without a scintilla of evidence that they knowingly and/or willfully violated a court order.
Although La.Code Civ. Proc. art. 1471 provides that dismissal is a remedy available to courts for a party’s failure to comply with court-ordered discovery, the Louisiana Supreme Court has clarified that dismissal is a draconian penalty and is thus reserved for extreme circumstances and only the most culpable conduct. Horton v. McCary, 93-2315 (La.4/11/94), 635 So.2d 199, 203. In Horton, the Court noted that federal district courts consider four factors when evaluating whether a failure to comply with discovery mandates dismissal or default judgment:[1]
*407 (1) whether the violation was willful or resulted from inability to comply; (2) whether less drastic sanctions would be effective; (3) whether the violations prejudiced the opposing party’s trial preparation; and (4) whether the client participated in the violation or simply misunderstood a court order or innocently hired a derelict attorney.
Ii,Horton, 635 So.2d at 203 (emphasis added). Accordingly, dismissal is generally appropriate when the client, as well as the attorney, is at fault, and the record must evidence that the failure was due to willfulness, bad faith, or fault of the noncompli-ant party. Id. Furthermore, this Court has repeatedly held that the ultimate sanction of dismissal should be imposed only when the noncompliant party is clearly aware that his failure to comply will result in dismissal. See, e.g., Medical Review Panel Proceedings of Peter v. Tauro Infirmary, 2005-0317, p. 5 (La.App. 4 Cir. 7/6/05), 913 So.2d 131, 134; LeBlanc v. GMAC Financial Services, 97-0131 (La.App. 4 Cir. 5/28/97), 695 So.2d 1106, 1108.
In this case, Appellees did not establish, nor did the majority find, that Appellants were clearly aware that failure to obtain the visas by a certain date would result in dismissal of their claims. By disregarding this critical fact, the majority expressly contradicts the law of this Circuit.
In this case, depositions were noticed[2] for July of 2003; however, the Filipino Appellants’ visas to travel to the United States were ultimately denied under the Immigration and Nationality Act (“INA”). In an attempt to provide an alternative method to obtain Appellants’ depositions, Appellants filed a Motion for Protective Order and to Order the Taking of Depositions by Video Teleconferencing in September 2004, asserting that the more stringent State Department restrictions after the events of September 11, 2001, prevented the Filipino claimants from obtaining visas, as all applications were denied in May 2003, and maintaining that Appellants were prepared and willing to go forward in the litigation. Notably, Appellees refused Appellants’ offers to take the depositions via video conferencing. Appellees also refused an offer from |?Appellants to take the depositions in another country where Appellants could actually obtain visas, at counsel for Appellants’ cost.
In August of 2006, MHI filed supplemental interrogatories and requests for production, requesting information regarding whether the applications for visas had been re-filed. Appellants’ responses indicated that they had retained immigration counsel and a special investigator to assist with the securing of visas; that each visa applicant was interviewed in 2003 at the time of the application; and that no documents were returned or provided to Appellants subsequent to the interviews other than the denial letter. Affidavits from Mark S. Cross,[3] the immigration counsel, *408 and Rob Kimmons,[4] the special investigator, were attached to Appellants’ responses and explained in detail the difficult and extensive process involved in obtaining visas for the plaintiffs.
Under these particular facts and circumstances, this writer would find that the trial court abused its discretion in dismissing Appellants’ claims against MHI with prejudice for failure to appear in New Orleans for deposition, as the record does not evidence a refusal on the part of the Filipino plaintiffs themselves to travel to New Orleans or to obtain visas within the time constraints articulated by the trial court. See Horton, 635 So.2d at 203. Although Appellants failed to comply with the court-ordered discovery, like the clients in Horton, the record in this case does not reveal that such failure was due to willfulness, bad faith, or fault on the part of the Filipino plaintiffs themselves. See id. Rather, the delay in obtaining the visas was attributable to a multitude of obstacles, including litigation | ¿regarding forum non conveniens, two devastating natural disasters, and other forces beyond Appellants’ control. Nor does the failure to comply with the court-ordered discovery appear to be due to any willfulness, bad faith, or fault of Appellants’ counsel.[5] See id. Additionally, because the Filipino claimants could have been deposed by video conferencing, which Appellants offered but MHI refused, MHI’s trial preparation was not prejudiced in this case. See id. Finally, less drastic sanctions would have been effective under these particular facts and circumstances. See id.
Therefore, pursuant to the standard articulated in Horton, supra, this miter would find that the Appellants’ noncompliance in the case sub judice does not rise to such a level that necessitates a dismissal with prejudice.[6] This Court has repeatedly followed Horton for the proposition that only the most egregious conduct is reserved for the ultimate sanction of dismissal for failure to comply with court-ordered discovery. See, e.g., Raspanti v. Litchfield (La.App. 4 Cir. 11/21/06), 946 So.2d 234, 241 (quoting Horton’s language regarding the fact that the dismissal of a complaint with prejudice “is the ultimate sanction for a plaintiff’ and “should be imposed for failure to comply with a discovery order only as a last resort, and only after the litigant has been afforded the opportunity *409 to be heard”); Medical Review Panel Proceedings of Peter v. Touro Infirmary (La.App. 4 Cir. 7/6/05), 913 So.2d 131, 134 (refusal to comply with court ordered discovery is a serious matter pursuant to Horton, but ultimate sanction of dismissal is reserved as a last resort); Lane v. Kennan (La.App. 4 Cir. 4/27/05), 901 So.2d 630, 632 (citing \ ¿Horton’s four-factor test to consider before taking “drastic action” of dismissal); Smith v. 4938 Pnytania Inc. (La.App. 4 Cir. 1/26/05), 895 So.2d 65, 70 (acknowledging Horton ⅛ holding that “the extreme sanction of dismissal was almost never to be imposed”); Barber v. Ichaso (La.App. 4 Cir. 2/27/02), 811 So.2d 1128, 1132 (citing Horton’s four-factor test); LeBlanc v. GMAC Financial Services (La.App. 4 Cir. 5/28/97), 695 So.2d 1106, 1108 (citing Hoiton and recognizing that dismissal is the ultimate sanction for a litigant; that dismissal should only be imposed as a last resort; and that dismissal should be imposed only after the litigant is afforded an opportunity to be heard).
Notably, this principle was also articulated by this Court in Columbia Homestead Ass’n v. Arnoult, 615 So.2d 1, 3 (La.App. 4 Cir.1992)(internal citations omitted)(emphasis added):
These [discovery] sanctions should be imposed for failure to comply with a discovery order only as a last resort and only after an opportunity to be heard has been afforded the litigant. Moreover, the record must show that the party was clearly aware that his noncompliance would result in the sanction and show that the party himself, and not merely his attorney, was at fault in failing to comply with the discovery order. The record must establish that the noncompliance was due to the “willfulness, bad faith or fault” of the party himself as opposed to his counsel. If the record does not contain evidence that the noncompliance was attributable to the party’s fault, the court has abused the wide discretion afforded it by LSA-C.C.P. art. 1471.
The majority distinguishes Columbia Homestead and its progeny only by a passing reference to the particular facts of this case, thereby disregarding the law of this Circuit.
Clearly, the plaintiffs’ deposition testimony cannot offer any enlightenment regarding liability; rather, the principal reason for deposing the widows and orphans in this case is to document the survival action, essentially how much they love and miss their deceased husbands and fathers. The matter should have been | (¡remanded with instructions to the trial court to conduct a hearing to determine whether the clients themselves failed to respond to the court-ordered discovery. Horton, 635 So.2d at 203-04; Columbia Homestead, 615 So.2d at 3. If the court determined that sanctions were warranted, such sanctions should not extend to a dismissal with prejudice, and should be directed only to counsel, as opposed to the widows and children. See Horton, 635 So.2d at 204.
For the foregoing reasons, I respectfully dissent from the majority’s affirmation of the motion for summary judgment granted in favor of MHI. Additionally, I dissent from the majority’s denial of counsel for Appellants’ motions for sanctions. While this Court has no authority to rule on such sanctions pursuant to Hampton v. Greenfield, 618 So.2d 859 (La.1993), the sanctions were nonetheless filed in this Court. The matter should be thus be remanded to the trial court to determine what, if any, sanctions against counsel for MHI are warranted.
In all other respects, I concur with the majority.

. The Court recognized that La.Code Civ. Proc. art. 1471 is similar to Federal Rule 37, as both contain a provision for dismissal or default judgment for failure to comply with court-ordered discovery. Horton, 635 So.2d at 203.

. Correspondence dated May 6, 2003 from counsel for Appellants to counsel for Appel-lees requested that counsel for Appellees serve Appellants with notices of deposition, as the U.S. Embassy in the Philippines required proof of the necessity of Appellants’ travel to the United States.

. Mr. Cross, a former Consular Officer, detailed, inter alia, the incredibly vast discretion that is afforded the Consular Officer in approving or denying visa applications; and that despite having a legitimate reason to travel to the United States (such as a court order), the applicant would also need to satisfy the Consular Officer that he or she has significant and specific personal ties to the Philippines that would effectively force them to return after traveling to the U.S. Mr. Cross further affirmed that each additional application after having previously been denied a visa would likely be increasingly difficult.

. Mr. Kimmons stated that civil unrest and terrorist activities hampered travel by any person to the Philippines. Mr. Kimmons further affirmed that Typhoon Durian devastated the Philippines in November 2006 as Hurricane Katrina devastated New Orleans, displacing many residents, causing infrastructural damage and a "state of calamity” as declared by Philippine President Gloria Macapagal Arroyo, thereby slowing the progress of communications within the Philippines.

. The Greek claimants involved in this litigation were brought to New Orleans for deposition in 2003, further evidencing Appellants’ good faith effort to comply with the court’s order to conduct depositions in New Orleans.

. Notably, this Court, in Smith v. 4938 Prylania, Inc., supra, at p. 10-11, 895 So.2d at 71, discussed Benware v. Means, wherein the Louisiana Supreme Court articulated the extreme type of behavior for which severe sanctions are warranted:
In the Benware [v. Means, 99-1410 (La.1/19/00), 752 So.2d 841] case the Supreme Court found that the trial court judge had not abused his discretion in prohibiting the defendant from offering any evidence at trial, because drastic sanctions were appropriate where the defendant was an attorney representing himself in a legal malpractice action where it was "virtually undisputed” that he had committed malpractice. The Benware case was "precisely the 'rare' case” that the Supreme Court had "contemplated as appropriate for the imposition of the harshest penalty.” 99-1410, p. 11, 752 So.2d at 848.