*410 ON REHEARING GRANTED
ROLAND L. BELSOME, Judge.
_JjPlaintiffs-Appellants appeal the trial court’s judgment dismissing their claims against all Defendants-Appellees and denying their motion for new trial. This Court’s prior opinion affirmed the matter in its entirety. Upon rehearing, we reverse the portion of the trial court’s judgment which dismissed the Appellants’ claims against Appellee Mitsubishi Heavy Industries, and remand the matter for proceedings consistent with this opinion.
FACTS AND PROCEDURAL HISTORY
Plaintiffs-Appellants (“Appellants”) are relatives and personal representatives of Greek and Filipino seamen who were aboard the M/V MARIKA on January 1, 1994. On that date, the vessel disappeared in a North Atlantic winter storm while in international waters en route from Canada to the Netherlands.[1] Neither the vessel nor any crewmembers were ever recovered. Suit was filed in Orleans Parish on October 13, 1994, against Mitsubishi Heavy Industries (“MHI”), the company who constructed the vessel; the American Bureau of Shipping 12(“ABS”), the surveyors who certified that the vessel was seaworthy after repairs in Greece in April 1993; and The Salvage Association, Ltd. (“SA”) and Paul Francis Daniel (“Daniel”), the surveyors who, in conjunction with the vessel’s hull insurance policy, performed a survey in Brazil in October 1993 and concluded that the vessel’s condition was satisfactory.
The litigation was interrupted at various times due to the events of September 11, 2001; litigation involving forum non con-veniens, the aftermath of Hurricane Katrina in 2005, Typhoon Durian in the Philippines in 2006,[2] and the arduous process of obtaining visas for the Filipino plaintiffs to travel to the United States for deposition purposes.
On July 30, 2007, SA and Paul Francis Daniel filed a motion for summary judgment. The trial court granted Daniel and SA’s motion for summary judgment on October 3, 2007, as well as a motion for summary judgment filed by ABS. That same date, the trial court also granted a motion to dismiss the Filipino plaintiffs that had been filed by MHI on June 28, 2007. Appellants’ motion for new trial was denied on October 16, 2007. On November 15, 2007, the trial court issued written reasons for each of the three judgments. This appeal followed.
On June 3, 2009, this Court affirmed the trial court’s dismissal of all Defendants-Appellants. Cantuba v. American Bureau of Shipping and Mitsubishi Heavy Industries, Ltd., 2008-0497 (La.App. 4 Cir. 6/3/09), 31 So.3d 397, 2009 WL 1564474. On August 10, 2009, rehearing was granted, ordering the matter reset for oral argument on November 17, 2009.
STANDARD OF REVIEW
An appellate court generally reviews a judgment granting dismissal under the abuse of discretion standard. Ridgeway v. Pierre, 2006-0521, p. 4 (La.App. 4 Cir.1/11/07), 950 So.2d 884, 888. Appellate courts review summary judgments de novo while applying the same criteria applied by trial courts to determine whether summary judgment is appropriate. Huber v. Liberty Mut. Ins. Co., 2000-0679, p. 5 (La.App. 4 Cir. 2/7/01), 780 So.2d 551, 554.
*411 DISCUSSION
We find that the trial court erred in dismissing Appellants’ claims with prejudice against MHI pursuant to La.Code Civ. Proc. art. 1471 and in denying Appellants’ motion for new trial.
In this case, the Filipino appellants were ordered by the trial court on February 2, 2000 to appear in New Orleans for deposition. Depositions were noticed[3] for July of 2003; however, the Filipino Appellants’ visas to travel to the United States were denied under the Immigration and Nationality Act (“INA”). In September 2004, Appellants filed a Motion for Protective Order and to Order the Taking of Depositions by Video Teleconferencing, asserting that the more stringent State Department restrictions after the events of September 11, 2001, prevented the Filipino claimants from obtaining visas, as all applications were ^denied in May 2003. Maintaining that Appellants were ready and willing to go forward in the litigation, Appellants proposed the video conferencing as an alternative to the efforts to bring the Filipino claimants to New Orleans for deposition. Appellants further argued that them good faith effort to comply with the court’s order to conduct the depositions in New Orleans was evidenced by the fact that the Greek claimants were brought to New Orleans for deposition in 2003.
On October 24, 2004, MHI filed a Cross-Motion to Dismiss the Claims of All Non-Appearing Plaintiffs Ordered on February 2, 2000 to Appear in New Orleans for Depositions. Appellants’ opposition asserted that despite the efforts to obtain the visas for the Filipino plaintiffs from the U.S. Embassy in Manila as soon as the forum non conveniens litigation was resolved, all applications were denied. Appellants further argued that Appellees refused Appellants’ offers to take the depositions via video conferencing or to take the depositions in another country where Appellants could obtain visas, at counsel for Appellants’ cost. After hearing arguments, the trial court signed a judgment dated February 4, 2005, denying Appel-lees’ motion for summary judgment, MHI’s cross-motion to dismiss, and Appellants’ motion for protective order. The trial court further ordered the Filipino plaintiffs to re-apply for visas to travel to the United States at the U.S. Embassy in Manila, Republic of Philippines, and to notify the court if the reapplication was unsuccessful so that a status conference could be scheduled.
|sIn August of 2006, MHI filed supplemental interrogatories and requests for production, requesting information regarding whether the applications for visas had been re-filed.[4] Appellants’ responses on December 6, 2006 indicated that they had retained immigration counsel and a special investigator to assist with the securing of visas; that each visa applicant was interviewed in 2003 at the time of the application; and that no documents were returned or provided to Appellants subsequent to the interviews other than the denial letter. Affidavits from Mark S. Cross,[5] the immigration counsel, and Rob *412 Kimmons,[6] the special investigator, were attached to Appellants’ responses.
MHI filed a second Motion to Dismiss in June 2007, arguing that Appellants had failed to comply with the court ordered discovery and made no genuine effort to obtain visas to travel to the U.S. After hearing arguments, the trial court granted MHI’s motion to dismiss. Appellants filed a motion for new trial, arguing that a few months after the court’s order to re-apply for visas, Hurricane Katrina struck, necessitating temporary relocation of Appellants’ counsel’s office to Houston, Texas; that although counsel for Appellants was in the process of contacting claimants for re-application in 2006, Typhoon Durian caused communications between claimants and counsel to come to a standstill; and that the claimants | ^successfully submitted the re-applications for visas on July 14, 2007 and were granted interviews for same on October 16, 2007, by the U.S. Embassy in Manila. As previously noted, however, Appellants’ motion for new trial was denied.
MHI argues that Appellants have repeatedly failed to comply with court-ordered discovery by failing to secure visas and allow for the deposition of the Filipino appellants. Thus, MHI argues, the trial court appropriately granted their motion to dismiss pursuant to La. Code Civ. Proc. art. 1471 because Appellants failed to demonstrate that the noncompliance with discovery orders was justified. Conversely, Appellants maintain that the delays in securing visas were not due to lack of diligence or good faith, and that the remedy of dismissal was too harsh and contrary to Louisiana jurisprudence.
Article 1471 provides, in pertinent part: If a party ... fails to obey an order to provide or permit discovery ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
(3) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.
La. Code Civ. Proc. art. 1471.
Although the statute provides that dismissal is a remedy available to courts for a party’s failure to comply with court-ordered discovery, the Louisiana Supreme Court has acknowledged that dismissal is a draconian penalty and is thus reserved for extreme circumstances and only the most culpable conduct. Horton v. McCary, 93-2315 (La.4/11/94), 635 So.2d 199, 203. In Horton, the Court noted 17that federal district courts consider four factors when evaluating whether a failure to comply with discovery mandates dismissal or default judgment:[7]
*413 (1) whether the violation was willful or resulted from inability to comply; (2) whether less drastic sanctions would be effective; (3) whether the violations prejudiced the opposing party’s trial preparation; and (4) whether the client participated in the violation or simply misunderstood a court order or innocently hired a derelict attorney.
Norton, 635 So.2d at 203. Dismissal is generally appropriate when the client, as well as the attorney, is at fault, and the record must evidence that the failure was due to willfulness, bad faith, or fault of the noncompliant party. Id. Furthermore, this Court has held that the ultimate sanction of dismissal should be imposed only when the noncompliant party is clearly aware that his failure to comply will result in dismissal. See Medical Review Panel Proceedings of Peter v. Touro Infirmary, 2005-0317, p. 5 (La.App. 4 Cir. 7/6/05), 913 So.2d 131, 134; LeBlanc v. GMAC Financial Services, 97-0131 (La.App. 4 Cir. 5/28/97), 695 So.2d 1106, 1108.
Appellants argue that the delay in securing visas was not due to any willfulness, bad faith or fault, but rather a result of forces beyond their control and legitimate obstacles in obtaining visas for the Filipino plaintiffs. Additionally, Appellants submit that the record does not evidence any willful misconduct, bad faith or personal fault on the part of the Filipino claimants themselves, and that the record contains information justifying the claimants’ inability to travel to New Orleans for deposition. Moreover, Appellants argue that the record does not | ^evidence that the Filipino plaintiffs were aware that their unsuccessful attempts to secure visas could result in dismissal of their claims.
Under these particular facts and circumstances, we find that the trial court abused its discretion in dismissing Appellants’ claims against MHI with prejudice for failure to appear in New Orleans for deposition. We do not find that the record evidences a refusal on the part of the Filipino plaintiffs themselves to travel to New Orleans. See Horton, supra, at 203. Moreover, although Appellants plainly failed to comply with the court-ordered discovery, like the clients in Horton, the record in this case does not reveal that such failure was due' to willfulness, bad faith, or fault on the part of the Filipino plaintiffs, but rather to natural disasters and other factors beyond Appellants’ control. See id. Nor do we find that the failure to comply with the court-ordered discovery was due to willfulness, bad faith, or fault of Appellants’ counsel. See id. Additionally, because the Filipino claimants could be deposed by video conferencing, which Appellants offered but MHI refused, we do not find that MHI’s trial preparation was prejudiced in this case. See id. Finally, less drastic sanctions would have been effective under these particular facts and circumstances. See id.
Therefore, pursuant to the standard articulated in Horton,[8] the Appellants’ non *414 compliance in the case sub judice does not rise to such a level that necessitates [fla dismissal with prejudice.[9] Accordingly, we reverse and remand the trial court’s judgment with respect to MHI.
The noncompliance in this case, however, is not without consequence. This Court finds that sanctions are plainly warranted against counsel for Appellants pursuant to La. C.C.P. art. 1473,[10] which pro *415 vides that if a party fails to appear for | ina properly noticed deposition, the court shall require payment of an adverse party’s reasonable expenses, including attorney’s fees, either by the party failing to act, or his attorney, or both. La. C.C.P. art. 1478.
Notably, the Louisiana Supreme Court has upheld the assessment of costs and attorney’s fees pursuant to La. C.C.P. art. 1478 resulting from discovery failures that were not the fault of the plaintiff himself. Allen v. Smith, 390 So.2d 1300, 1302 (La.1980). In Allen, the Court recognized that “it [was] not clear to what extent, if any, the plaintiff, rather than the attorney advising him, was at fault for failing to make discovery.” Id. As such, the Court found that the trial court abused its discretion in “imposing the ultimate sanction of dismissal with prejudice; the record does not support a finding that the failure was due to the plaintiffs willfulness, bad faith, or fault.” Id. The Court concluded that “[b]ecause the record contains no evidence that the plaintiff was personally at fault,” but that the failure to provide discovery was ostensibly the result of the inattention of his counsel, counsel for plaintiff alone was obligated to pay costs and attorney’s fees. Id.
In this case, the record does not evidence that Appellants themselves exhibited any willfulness or bad faith in the failure to appear for the depositions. Accordingly, like the plaintiff in Allen, Appellants herein should not be subject to the draconian penalty of dismissal. See id. The matter is hereby remanded to the trial court for the imposition of sanctions against counsel for Appellants pursuant to La. C.C.P. art. 1473 and for the determination of the amount of same.
InCONCLUSION
The portion of the trial court’s judgment granting MHI’s motion to dismiss is reversed and the matter remanded for proceedings consistent with this opinion. The matter is hereby remanded to the trial court for imposition of sanctions against counsel for Appellants and determination of the amount of same pursuant to La. C.C.P. art. 1473. In all other respects, this Court’s opinion remains unchanged.
REVERSED IN PART ON REHEARING; REMANDED.

. The record reveals that the winter storm produced winds between 46 and 58 miles per hour; gusts of 63 miles per hour; 30-foot waves and swells of 32 to 42 feet.

. See infra note 6.

.Correspondence dated May 6, 2003 from counsel for Appellants to counsel for Appel-lees requested that counsel for Appellees serve Appellants with notices of deposition, as the U.S. Embassy in the Philippines required proof of the necessity of Appellants’ travel to the United States.

. MHI's motion to compel responses to this discovery was granted by the trial court.

. Mr. Cross, a former Consular Officer, detailed, inter alia, the incredibly vast discretion that is afforded the Consular Officer in approving or denying visa applications; and that despite having a legitimate reason to travel to the United States (such as a court *412 order), die applicant would also need to satisfy the Consular Officer that he or she has significant and specific personal ties to the Philippines that would effectively force them to return after traveling to the U.S. Mr. Cross further affirmed that each additional application after having previously been denied a visa would likely be increasingly difficult.

. Mr. Kimmons stated that civil unrest and terrorist activities hampered travel by any person to the Philippines. Mr. Kimmons further affirmed that Typhoon Durian devastated the Philippines in November 2006 as Hurricane Katrina devastated New Orleans, displacing many residents, causing infrastructural damage and a “state of calamity” as declared by Philippine President Gloria Macapagal Arroyo, thereby slowing the progress of communications within the Philippines.

. The Court recognized that La.Code Civ. Proc. art. 1471 is similar to Federal Rule 37, as both contain a provision for dismissal or default judgment for failure to comply with *413 court-ordered discovery. Horton, 635 So.2d at 203.

. This Court has repeatedly followed Horton for the proposition that only the most egregious conduct is reserved for the ultimate sanction of dismissal for failure to comply with court-ordered discovery. See, e.g., Raspanti v. Litchfield (La.App. 4 Cir. 11/21/06), 946 So.2d 234, 241 (quoting Horton’s language regarding the fact that the dismissal of a complaint with prejudice "is the ultimate sanction for a plaintiff” and "should be imposed for failure to comply with a discoveiy order only as a last resort, and only after the litigant has been afforded the opportunity to be heard”); Medical Review Panel Proceedings of Peter v. Touro Infirmary (La.App. 4 Cir. 7/6/05), 913 So.2d 131, 134 (refusal to comply with court ordered discovery is a serious matter pursuant to Horton, but ultimate sanction *414 of dismissal is reserved as a last resort); Lane v. Kennan (La.App. 4 Cir. 4/27/05), 901 So.2d 630, 632 (citing Horton’s four-factor test to consider before taking "drastic action” of dismissal); Smith v. 4938 Prytania Inc. (La.App. 4 Cir. 1/26/05), 895 So.2d 65, 70 (acknowledging Horton's holding that "the extreme sanction of dismissal was almost never to be imposed”); Barber v. Ichaso (La.App. 4 Cir. 2/27/02), 811 So.2d 1128, 1132 (citing Horton’s four-factor test); LeBlanc v. GMAC Financial Services (La.App. 4 Cir. 5/28/97), 695 So.2d 1106, 1108 (citing Horton and recognizing that dismissal is the ultimate sanction for a litigant, that dismissal should only be imposed as a last resort, and only after the litigant is afforded an opportunity to be heard).
Notably, this principle was also recognized by this Court prior to Horton in Columbia Homestead Ass'n v. Arnoult, 615 So.2d 1 (La.App. 4 Cir.1992)(emphasis added)(internal citations omitted):
These [discovery] sanctions should be imposed for failure to comply with a discovery order only as a last resort and only after an opportunity to be heard has been afforded the litigant. Moreover, the record must show that the party was clearly aware that his noncompliance would result in the sanction and show that the parly himself and not merely his attorney, was at fault in failing to comply with the discovery order. The record must establish that the noncompliance was due to the "willfulness, bad faith or fault” of the party himself as opposed to his counsel. If the record does not contain evidence that the noncompliance was attributable to the party’s fault, the court has abused the wide discretion afforded it by LSA-C.C.P. art. 1471.

. This Court, in Smith v. 4938 Prytania, Inc., supra, at p. 10-11, 895 So.2d at 71, discussed Benware v. Means, wherein the Louisiana Supreme Court articulated the type of behavior for which severe sanctions were warranted:
In the Benware [v. Means, 99-1410 (La.1/19/00), 752 So.2d 841] case the Supreme Court found that the trial court judge had not abused his discretion in prohibiting the defendant from offering any evidence at trial, because drastic sanctions were appropriate where the defendant was an attorney representing himself in a legal malpractice action where it was "virtually undisputed” that he had committed malpractice. The Benware case was "precisely the 'rare' case” that the Supreme Court had "contemplated as appropriate for the imposition of the harshest penalty.” 99-1410, p. 11,752 So.2d at 848.
Likewise, the facts and circumstances of the instant case are plainly distinguishable from this Court's decision in At Your Service Enterprises, Inc. v. Swope, where the Appellant not only repeatedly violated orders to provide discovery and a consent judgment executed in open court, but also failed to appear on the date of trial, and again failed to appear in court on his own motion for a new trial. Swope, 2007-1620, pp. 9-10 (La.App. 4 Cir. 1/14/09), 4 So.3d 138, 144-45. Accordingly, in Swope, dismissal was mandated pursuant to La. C.C.P. art. 1672(A)(l)(providing that "[a] judgment dismissing an action shall be rendered upon application of any party, when the plaintiff fails to appear on the day set for trial”). Id.

. If a party or an officer, director, or managing agent of a party or a person designated under Articles 1442 or 1448 to testify on behalf of a party fails to appear before the officer who is to take his deposition, after being served with a proper notice, or to serve answers or objections to interrogatories submitted under Article 1457, after proper service of the interrogatories, or to serve a written response to a request for inspection submitced under Article 1461, after proper service of the request, the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under Paragraphs (1), (2), and (3) of Article 1471. In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advis *415 ing him or both to pay the reasonable expenses, including attorney’s fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.
The failure to act described in this Article may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has applied for a protective order as provided by Article 1426.
La. C.C.P. art. 1473 (emphasis added).