ROSEMARY LEDET, Judge.
I,This is a medical malpractice case. The plaintiff, Crystal Winding, filed this malpractice suit against, among others, Dr. Washington Bryan. Dr. Bryan filed a “no-expert” motion for summary judgment.[1] Although Ms. Winding’s opposition included a notarized expert’s affidavit, the trial court, as a sanction for Ms. Winding’s violating the pre-trial scheduling order, refused to consider her expert’s affidavit. Based on Ms. Winding’s lack of an expert witness, the trial court granted |aDr. Bryan’s motion for summary judgment. The narrow issue presented on appeal is whether the trial court erred in excluding the expert’s affidavit and granting the motion for summary judgment. Answering that question in the affirmative, we reverse and remand.
FACTUAL AND PROCEDURAL BACKGROUND
On November 13, 2003, Ms. Winding was admitted to Pendleton Memorial Methodist Hospital (“PMMH”) for a lapa-roscopic surgery to alleviate chronic pelvic pain. Dr. Bryan was her treating gynecologist and surgeon. Dr. Bryan’s alleged malpractice related to complications that arose during the surgical procedure. On December 22, 2004, Ms. Winding filed a Request for Medical Review Panel with the Louisiana Patient’s Compensation Fund Oversight Board (the “Board”), naming as defendants Dr. Bryan, PMMH, and the Board. In her request (complaint), she alleged that, during the surgical procedure, Dr. Bryan “hit a pumper” — an artery — and that he failed to properly close *958 the area. She farther alleged that, following the procedure, she experienced numbness and symptoms of vascular problems in her left leg below the operative site. She still further alleged that Dr. Bryan’s malpractice included “[flailing to properly follow the patient and perform appropriate and timely procedures to determine the cause of patient’s continued complaints following the November 13, 2003 aforementioned procedure.”[2]
|sOn December 12, 2007, a Medical Review Panel (the “MRP”) convened. The MRP unanimously found that the evidence did not support the conclusion that Dr. Bryan failed to meet the applicable standard of care as charged in the complaint;[3] the panel made the following conclusions:
1) A known complication of laparoscopy is injury to blood vessels, more specifically the external line.
2) Dr. Bryan appropriately recognized the complication and managed it appropriately which included a consultation with a surgeon.
3) Post-operatively, Dr. Bryan referred the patient to the proper specialists (neurologist and vascular surgeon) for follow-up.
In March 2008, Ms. Winding commenced this medical malpractice suit against the same defendants — Dr. Bryan, PMMH, and the Board. In November 2011, the trial court issued a pre-trial scheduling order. As amended,[4] the scheduling order imposed the following deadline dates: (i) Ms. Winding was required to supplement her written discovery responses and to submit a witness list by February 9, 2012; (ii) Dr. Bryan was required to submit a witness list by March 9, 2012; and (iii) all discovery was required to be completed by May 9, 2012.
Dr. Bryan submitted his witness list on March 19, 2012. Ms. Winding submitted her witness list on March 30, 2012. Included on her witness list was the name of an expert, Dr. Julius S. Piver, a board certified obstetrician and |4gynecologist.[5] On June 5, 2012, Ms. Winding’s counsel sent a copy of Dr. Piver’s report to Dr. Bryan’s counsel and advised his counsel of Dr. Piver’s recent death. On March 6, 2013, the trial court, upon application of Ms. Winding’s counsel certifying that discovery was complete, issued a trial order setting the case for a jury trial commencing on October 28, 2013.
On August 12, 2013, Dr. Bryan filed a motion for summary judgment. In support, he noted that the alleged malpractice was not of an obvious type that could be discerned by laypersons without the aid of an expert; hence, he contended that a medical expert was required. He further contended that Ms. Winding had failed to identify a medical expert who would testify at the scheduled trial. Finally, he cited *959 the unanimous finding of the MRP that he had not breached the standard of care.
On September 6, 2013, Ms. Winding’s counsel filed a motion to continue the motion for summary judgment, which was granted; the hearing on the motion was reset for October 9, 2013. In the interim, on September 30, 2013, new co-counsel enrolled on Ms. Winding’s behalf. On October 1, 2013, Ms. Winding filed an opposition to the motion for summary judgment. In support of her opposition, she attached an expert’s affidavit. Her expert, Dr. Bruce L. Halbridge, attested that he was a board certified obstetrician and gynecologist. He further attested, to a reasonable degree of medical certainty, that Dr. Bryan had breached the standard of care.
In his reply memorandum, Dr. Bryan objected to Ms. Winding’s use of either Dr. Halbridge’s affidavit to defeat the motion for summary judgment or his 1 ^testimony at trial. Dr. Bryan’s objection was based on Ms. Winding’s untimely disclosure of her expert’s identity. Dr. Bryan stressed that the trial court, upon the application of Ms. Winding’s counsel certifying that all discovery had been completed, issued a trial order setting the case for trial. He further stressed that at no time before she filed her opposition did Ms. Winding identify an expert witness who would testify at trial.[6] Dr. Bryan cited the general rule that an expert witness should be disclosed at least ninety days before trial. See La. C.C.P. art. 1425. At a minimum, Dr. Bryan noted that the expert witness should have been disclosed when discovery interrogatories were issued requesting the names of all experts.[7] Finally, Dr. Bryan contended that to disclose the expert twenty-eight days before trial was unfair and “trial by ambush.”
Agreeing with Dr. Bryan, the trial court, at the close of the hearing, orally granted the motion for summary judgment. In so doing, the trial court reasoned that “the defendant would be prejudiced if the Court were to grant relief and deny the Motion for Summary Judgment.” The court further reasoned that given the complicated nature of the alleged malpractice, a medical expert was required to testify concerning the standard of care and whether it was breached. The court still further reasoned that “[tjhere is no expert which has been filed timely pursuant to the Rules of Court or the Scheduling Order in this matter.” The trial court stated that it would not allow the expert that was first named in Ms. Winding’s opposition to defeat Dr. Bryan’s motion for summary judgment. On January 9, 2013, the trial | ficourt rendered judgment granting Dr. Bryan’s motion for summary judgment. As its written reasons for judgment, the trial court adopted Dr. Bryan’s memorandum in support of his motion for summary judgment. This appeal followed.
DISCUSSION
Ms. Winding’s sole assignment of error is that the trial court erred in holding that she could not present expert medical testimony related to liability and causation— her expert’s affidavit — because allowing her to do so would prejudice Dr. Bryan. Dr. Bryan counters that the trial court correctly denied Ms. Winding’s untimely attempt to amend her witness list, in effect, by submitting her expert’s affidavit. *960 As noted, the trial court, agreeing with Dr. Bryan, excluded Ms. Winding’s expert’s affidavit as a sanction for her violating the pre-trial scheduling order. Based on her lack of an expert witness, the trial court granted summary judgment and dismissed her case. The issue in this case thus involves the interplay between the rules governing summary judgment and the sanctions for violating a pre-trial scheduling order.
The rules regarding summary judgment are codified in La. C.C.P. arts. 966 and 967. Appellate courts review the grant of a motion for summary judgment de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Chapital v. Harry Kelleher & Co., Inc., 13-1606, pp. 5-6 (La.App. 4 Cir. 6/4/14), 144 So.3d 75, 81-82 (quoting Mandina, Inc. v. O’Brien, 13-0085, p. 5 (La.App. 4 Cir. 7/31/13), — So.3d —, —, 2013 WL 3945030 (collecting cases and summarizing the principles governing summary judgment)).
The application of the rules governing summary judgment to this case is straightforward. Dr. Bryan filed a motion for summary judgment, which he |7supported by attaching a copy of the MRP’s unanimous opinion in his favor. As noted, the MRP found that Dr. Bryan had not breached the standard of care. Dr. Bryan thus negated a necessary element of Ms. Winding’s claim, and the burden shifted to Ms. Winding to produce factual support to establish that she will be able to satisfy her evidentiary burden of proof at trial. In an attempt to satisfy her burden, Ms. Winding submitted an affidavit of an expert in the field of obstetrics and gynecology, Dr. Halbridge. Based on our de novo review, we find that Dr. Halbridge’s affidavit, if considered, would have been sufficient to defeat Dr. Bryan’s motion for summary judgment.[8] Stated otherwise, his affidavit would have established the existence of genuine issues of material fact regarding the standard of care, liability, and causation.
The result of the trial court’s exclusion of Dr. Halbridge’s affidavit was Ms. Winding’s lack of an expert witness to establish each component of her medical malpractice case. Based on Ms. Winding’s lack of an expert witness, the trial court granted Dr. Bryan’s “no-expert” motion for summary judgment and dismissed Ms. Winding’s case. This case thus hinges on whether the trial court erred in excluding |sDr. Halbridge’s affidavit. In reviewing this issue, we apply an abuse of discretion standard. In re Succession of Holzenthal, 12-0211, p. 9 (La.App. 4 Cir. 9/26/12), 101 So.3d 81, 87-88. In Holzenthal, this court outlined the governing law on this issue as follows:
*961 [I]n matters of discovery, such as whether a witness has been listed in a timely manner, a decision of the trial court should not be disturbed in the absence of an abuse of discretion. Duncan v. Bartholomew, 11-0855, p. 19 (La.App. 4 Cir. 3/14/12), 88 So.3d 698, 712. Specifically, where a pre-trial order has not been complied with, as in the case [when a party fails to] ... identify his expert witnesses prior to the close of discovery, it is within the trial court’s discretion to disallow witnesses, expert or not, from testifying. St. John Baptist Church of Phoenix v. Thomas, 08-0687, p. 10 (La.App. 4 Cir. 12/3/08), 1 So.3d 618, 625.
Id. (citing La. C.C.P. arts. 1551C[9] and 1471A(2)[10]).
lain this ease, the trial court, albeit without citing any authority,[11] imposed a sanction for violating the pre-trial scheduling order pursuant to La. C.C.P. arts. 1551C and 1471A(2) and (3).[12] The direct sanction the trial court imposed was the exclusion of Ms. Winding’s expert’s affidavit. Given the procedural posture in which the sanction was imposed — a “no-expert” motion for summary judgment — the ultimate result was the imposition of a “death penalty” sanction — dismissal of Ms. Winding’s case.
Although La. C.C.P. art. 1551C incorporates La. C.C.P. art. 1471A(2) and (3), and thus authorizes the “death penalty” sanction of dismissal in an appropriate case for violating a pre-trial scheduling order, the Louisiana Supreme Court has admonished that “this extreme penalty obviously should seldom be imposed and should be reserved for only the most flagrant case.” Benware v. Means, 99-1410, p. 8 (La.1/19/00), 752 So.2d 841, 846. The Supreme Court noted that “[e]ach case must be decided upon its own facts and circumstances, and the trial judge is vested with much discretion in determining the penalty for violation of pre-trial or discovery orders.” Benware, 99-1410 at p. 9, 752 So.2d at 847.
To guide courts in making a case-by-case determination of the appropriate sanction for violating a pre-trial scheduling order, the Supreme Court in Benware enumerated the following four factors: (i) whether the attorney, the client, or both committed the misconduct; (ii) the stage of *962 the proceeding at which the violation occurred; (iii) the presence or absence of prejudice to the opposing party’s | ^preparation of the case; and (iv) the nature and persistency of the misconduct that constitutes the violation. Benware, 99-1410 at pp. 9-10, 752 So.2d at 847.[13] Applying the four Benware factors to the present case, we find the trial court abused its discretion in excluding Ms. Winding’s expert’s affidavit and dismissing her case.
The first factor is who committed the misconduct — the attorney, the client, or both. Dismissal is a draconian penalty generally reserved for those cases in which the client, as well as the attorney, was at fault. Benware, 99-1410 at p. 9, 752 So.2d at 847 (citing Horton v. McCary, 93-2315, p. 10 (La.4/11/94), 635 So.2d 199, 203). There is no evidence that Ms. Winding was at fault. At the hearing, Ms. Winding’s counsel assumed full responsibility. Ms. Winding’s counsel stated that Ms. Winding should not be punished by having her case dismissed when she was not personally involved in the expert witness issue; rather, her counsel stated that any punishment “should be directed at The Young Firm in the form of sanctions.” The record supports Ms. Winding’s counsel’s statement that Ms. Winding had no involvement in the violation of the pre-trial scheduling order.
The second factor is the stage of the proceeding at which the violation occurred. The violation in this case occurred in the pre-trial context of a motion for Insummary judgment, albeit on the eve of the trial setting.[14] Although this case has been pending since 2008, this was the first time this case had been set for trial.
The third factor is prejudice to the opponent. At the hearing, the trial court orally reasoned that “the defendant would be prejudiced if the Court were to grant relief and deny the Motion for Summary Judgment.” Dr. Bryan contends that the trial court correctly found that he would be prejudiced by allowing Ms. Winding to use either Dr. Halbridge’s affidavit or his trial testimony. Dr. Bryan contends that the prejudice that he would have suffered was being deprived of the ability to fully vet Ms. Winding’s expert and to present a Daubert[15] defense. He stresses that the alleged malpractice occurred in 2003, that this suit was filed in 2008, and that the October 2013 trial date was set on Ms. Winding’s counsel’s representation that discovery was complete. He thus contends that the trial court did not abuse its discretion in refusing to continue the October 2013 trial date to allow Ms. Winding to use an untimely disclosed expert.
Conversely, Ms. Winding contends that there was no prejudice to Dr. Bryan. The *963 gist of Ms. Winding’s contention is that this is not a case in which no expert was disclosed until the opponent’s motion for summary judgment was filed. Rather, she emphasizes that this is a case in which an expert was disclosed, but the first expert died before being deposed or testifying at trial. Ms. Winding points out that she was seeking to substitute a deceased expert with a replacement expert in |1?the same field. She also points out that Dr. Bryan was well aware that she had retained an expert to address liability and causation and that he also was aware that her first expert had died.[16] Ms. Winding thus contends that it was not a surprise to Dr. Bryan that she would have to retain a replacement expert to testify at trial. She further contends that there was no prejudice to Dr. Bryan because her two experts — Dr. Piver and Dr. Halbridge — were interchangeable-both were board-certified in obstetrics and gynecology, and both were basing their opinions on the same theories.[17] Alternatively, Ms. Winding contends that any prejudice to Dr. Bryan could have been ameliorated by allowing him to depose her expert and, if warranted, to file a pre-trial Daubert motion, and, if necessary, by continuing the trial.
Given the pre-trial context in which the misconduct was raised, we find, as Ms. Winding alternatively contends, that the prejudice to Dr. Bryan could have been ameliorated by allowing him to depose her expert, to file a Daubert motion, or to continue the trial. Moreover, we note, as Ms. Winding emphasizes, that it was not a surprise to Dr. Bryan that it would be necessary for Ms. Winding to retain a replacement expert.
The fourth, and final, factor is the nature and the persistency of the misconduct. The trial court, in its colloquy with counsel at the hearing on the | ^motion for summary judgment, addressed the nature of the misconduct. The trial court framed the misconduct as Ms. Winding’s counsel’s failure to meet the requirements of the pre-trial scheduling order by timely filing notice of Ms. Winding’s witnesses. The trial court emphasized the lapse of over a year since the death of Ms. Winding’s first expert, Dr. Piver, and the lack of any reference to the first expert’s death in Ms. Winding’s opposition to the motion for summary judgment. The trial court questioned Ms. Winding’s counsel regarding the failure to amend the witness list. Ms. Winding’s counsel replied that it was “an oversight by my office that we did not amend the witness list to change the name from Dr. Piver to Dr. Halbridge.” The trial court, as Dr. Bryan points out, was dissatisfied with Ms. Winding’s counsel’s excuse and thus refused to consider Dr. Halbridge’s affidavit or trial testimony.
The trial court, however, failed to address the issue of the persistency of the misconduct. The following chronology is undisputed. Ms. Winding’s first expert died sometime before June 2012. Although Dr. Bryan’s counsel was informed in June 2012 of the first expert’s death, his counsel neither requested that Ms. Wind *964 ing supplement her witness list with a new expert, nor filed a motion to compel the disclosure of any new expert. Instead, Dr. Bryan’s counsel stated at the hearing that, after learning that of the first expert’s death, “we waited around to see what they were going to do.” The issue regarding Ms. Winding’s replacement expert thus was not raised until October 2013 when Ms. Winding filed her opposition to Dr. Bryan’s motion for summary judgment, which was accompanied by her replacement expert’s affidavit. Given this chronology of events, it cannot be concluded that the misconduct was persistent. We note, however, that Ms. Winding’s counsel did not deny that the witness list should have been amended |14earlier to name the replacement expert; rather, her counsel explained that the failure to do so was the result of her counsel’s oversight.
Based on our analysis of the above four Benware factors, we find the trial court’s selected sanction — excluding the expert’s affidavit and dismissing the case — was too harsh. Although Ms. Winding’s counsel was dilatory in amending the witness list and failing to disclose the replacement expert’s identity, her counsel’s oversight, under these circumstances, was insufficient to warrant the draconian sanction imposed.[18] Accordingly, we find the trial court abused its discretion.

DECREE

For the foregoing reasons, the trial court’s judgment is reversed; and this matter is remanded for further proceedings.
REVERSED AND REMANDED.

. A "no-expert” motion for summary judgment is premised on the well-settled jurisprudence requiring an expert witness to prove a medical malpractice claim in most cases. The rule is based on the following jurisprudence:
To prevail in a medical malpractice action based on the negligence of a physician, a plaintiff must establish the standard of care applicable to the physician, a violation by the physician of that standard of care, and a causal connection between the physician’s alleged negligence and the plaintiff’s injuries resulting therefrom. Pftffner v. Cor-rea, 94-0924, p. 8 (La. 10/17/94), 643 So.2d 1228, 1233; La. R.S. 9:2794(A). Although the jurisprudence has recognized exceptions in instances of obvious negligence, these exceptions are limited to "instances in which the medical and factual issues are such that a lay jury can perceive negligence in the charged physician’s conduct as well as any expert can.” Williams v. Memorial Medical Center, 2003-1806, p. 16 (La.App. 4 Cir. 3/17/04), 870 So.2d 1044, 1054; Pfiff-ner, 94-0924 atp. 9, 643 So.2d at 1234; see also Coleman v. Deno, 2001-1517, p. 20 (La. 1/25/02), 813 So.2d 303, 317. The jurisprudence has thus recognized that "an expert witness is generally necessary as a matter of law to prove a medical malpractice claim.” Williams, 2003-1806 at p. 16, 870 So.2d at 1054; Williams v. Metro Home Health Care Agency, Inc., 2002-0534, p. 5 (La.App. 4 Cir. 5/8/02), 817 So.2d 1224, 1228.
Albers v. Vina Family Medicine Clinic, 12-1484, pp. 3-4 (La.App. 4 Cir. 5/22/13), 116 So.3d 940, 942-43.

. In her subsequently filed petition, Ms. Winding additionally alleged that Dr. Bryan failed “to diagnose the clot and problems evident on a pre-discharge scan of her leg.”

. As to PMMH, the MRP found that “[t]here is nothing in the record presented to the panel to indicate that the hospital or its employees deviated from the standard of care.” On August 4, 2009, the trial court granted PMMH’s motion for summary judgment.

. At the parties' request, the scheduling order was amended in February 2012 to correct a clerical error in the original order concerning the deadline dates; in the original order, the year 2011 instead of the year 2012 was mistakenly listed.

.A copy of Ms. Winding’s witness list appears in the record. Her witness list contains a certificate of service, certifying that service of the witness list was made on all counsel of record. Nonetheless, Dr. Bryan's counsel contends that he never received a copy of the witness list.

. As noted elsewhere, Dr. Bryan’s counsel concedes that he was notified in June 2012 that Ms. Winding’s first expert was Dr. Piver and that Dr. Piver recently had died.

. Although Dr. Bryan’s memorandum in support of his motion for summary judgment references his discovery interrogatories as an attachment, a copy of neither his discovery interrogatories nor Ms. Winding’s responses thereto is in the record on appeal.

. Dr. Halbridge attested that Dr. Bryan breached the standard of care in the following respects:
• Failed to treat Ms. Winding with the appropriate regime of antibiotics;
• Failed to identify the major pelvic blood vessels, which resulted in ligating the left internal iliac vessel and the adjacent nerves supplying the left leg, which in turn caused Ms. Winding’s left leg muscle weakness and parathesia;
• Failed to obtain a consultation, which caused the failure to release the adjacent pelvic plexus nerves;
• Failed to obtain a vascular consultation, which in turn Dr. Bryan failed to repair the internal iliac artery and free trapped nerves;
• Failed to feel for a pedal pulse in Ms. Winding’s left leg; and
• Failed to place atraumatic vascular clamp(s) across the bleeding artery, clear the-pelvic floor of blood, or identify the internal iliac artery before suturing the artery.

. La. C.C.P. art. 1551C provides:
If a party's attorney fails to obey a pretrial order, or to appear at the pretrial and scheduling conference, or is substantially unprepared to participate in the conference or fails to participate in good faith, the court, on its own motion or on the motion of a party, after hearing, may make such orders as are just, including orders provided in Article 1471(2), (3), and (4). In lieu of or in addition to any other sanction, the court may require the party or the attorney representing the party or both to pay the reasonable expenses incurred by noncompliance with this Paragraph, including attorney fees.

. La. C.C.P. art. 1471A(2) provides:
If a party ... fails to obey an order to provide or permit discovery ... the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
[[Image here]]
(2) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence.

. At the hearing, Dr. Bryan’s counsel argued that Ms. Winding’s expert's affidavit should be excluded not as a matter of punishment, but as a matter of fairness.

. La. C.C.P. art. 1471A(3) provides: "[a]n order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.”

.In Horton v. McCary, 93-2315 (La.4/11/94), 635 So.2d 199, 203, the Louisiana Supreme Court adopted from the federal jurisprudence four factors to be considered when evaluating whether a failure to comply with discovery mandates dismissal. Those factors are as follows: (1) whether the violation was willful or resulted from inability to comply; (2) whether less drastic sanctions would be effective; (3) whether the violation prejudiced the opposing party’s trial preparation; and (4) whether the client participated in the violation or simply misunderstood a court order or innocently hired a derelict attorney.

. As discussed elsewhere, the fact that, in this case, the misconduct was raised in the pre-trial context is a significant factor in our determination that the sanction imposed was too harsh. This case is distinguishable on this basis from Provosty v. ARC Const., LLC, 12-1015 (La.App. 4 Cir. 3/20/13), 119 So.3d 23, which Dr. Bryan cites; in Provosty, the issue of the failure to timely disclose an expert witness was raised at trial.

. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

. As noted earlier, on March 30, 2012, Ms. Winding filed a witness list that included the first expert, Dr. Piver. Although Dr. Bryan’s counsel denied receiving a copy of the witness list, Ms. Winding’s counsel included on the witness list a certificate of service, certifying service on all counsel of record. On June 5, 2012, Ms. Winding's counsel sent Dr. Bryan’s counsel a copy of Dr. Piver’s report and advised his counsel that Dr. Piver had recently died before being deposed. Dr. Bryan’s counsel acknowledged receiving a copy of Dr. Pi-ver’s report and being informed that Dr. Piver had died.

. According to Ms. Winding, both experts opined that the occlusion of the artery resulted from improper suturing and that this caused her nerve damage in her leg.

. The issue of whether a lesser sanction was warranted for the violation of the pre-trial scheduling order is not before us on appeal.