| F. PATRICK QUINN, III | * | NO. 2019-CA-1009 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| EDWIN M. PALMER AND | * | |
| DECATUR HOTELS, L.L.C. | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2013-07753, DIVISION "F"
Honorable Christopher J. Bruno, Judge
* * * * * *
**Judge Dale N. Atkins**
* * * * * *

(Court composed of Judge Rosemary Ledet, Judge Sandra Cabrina Jenkins, Judge Dale N. Atkins)

Robert J. Ellis, Jr.
CANLAS ELLIS, LLC
650 Poydras Street, Suite 2615
New Orleans, LA 70130

      COUNSEL FOR PLAINTIFF/APPELLEE

Henry L. Klein
LAW OFFICE OF HENRY L. KLEIN
844 Baronne Street
New Orleans, LA 70113-1103

      COUNSEL FOR DEFENDANT/APPELLANT

                **AFFIRMED**
                **MARCH 25, 2020**

This is a contempt proceeding arising in a civil action. Appellants, Edwin M. Palmer, III, and Decatur Hotels, L.L.C. ("Decatur"), appeal the trial court's July 26, 2019 judgment finding them in contempt of court for failure to comply with the court's orders to produce discovery; striking all of their defense, offset, and reconventional demand claims; and ordering them to pay Appellee F. Patrick Quinn, III, $1,000.00 in attorney's fees and court costs. For the reasons that follow, we affirm.

DNA
RML
SCJ

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. Palmer and Mr. Quinn, along with Mr. Palmer's wife and others, formed Decatur in January 1989. Decatur is a business which owns and operates hotels in New Orleans, including the La Gallerie Hotel. Decatur also leases from a third party a property adjacent to the La Gallerie Hotel. From Decatur's inception, both Mr. Palmer and Mr. Quinn, along with their other business partners, acted as managers of Decatur. On September 24, 2007, Mr. Quinn ceased acting as a manager, but retained his ownership interest in the company. Thereafter, Mr. Palmer acted, and continues to act, as the sole manager of Decatur.

1

On August 16, 2013, Mr. Quinn filed a Petition for Specific Performance and Damages, naming Mr. Palmer and Decatur as defendants. In the petition, Mr. Quinn alleged that Mr. Palmer had been the sole member/manager of Decatur with sole control over the business since September 24, 2007. Mr. Quinn further alleged that, during Mr. Palmer's tenure as manager of Decatur, Mr. Palmer "converted vast sums of money from the accounts of Decatur for his personal use and account" and that these transactions were without the consent and agreement of the majority of Decatur's other members as required by Decatur's operating agreement. Mr. Quinn alleged that the amount of funds converted was over $5 million. Mr. Quinn also alleged that Mr. Palmer violated the operating agreement by refusing to make Decatur's financial records available for Mr. Quinn's inspection after Mr. Quinn made written demand. Finally, Mr. Quinn alleged that Mr. Palmer breached the terms of the lease agreement with the third party from whom Decatur leased the property adjacent to the La Gallerie Hotel and was shortly to be evicted, which would cause Decatur to be unable to continue to operate as a business.

On June 24, 2015, the trial court issued its first pre-trial notice, setting the matter for trial on February 1, 2016. Signed by all parties and their counsel, the pre-trial notice provided deadlines for the parties to produce witness and exhibit lists, expert reports, and for the completion of discovery. The pre-trial notice further provided that, if the court finds that a party failed to comply with a pre-trial order, "the court, on its own motion, or on the motion of a party, after hearing, may

make such orders as are just, including orders provided in [La. C.C.P.] art. 1471 (2), (3), and (4)."[1]

Subsequently, on July 30, 2015, Mr. Quinn propounded discovery requests to Mr. Palmer and Decatur. When Mr. Quinn received no discovery responses, he filed a motion to compel discovery on September 1, 2015. After properly noticing the parties to appear and show cause why the motion to compel should not be granted, the trial court held a hearing on the motion to compel on September 10, 2015, and heard arguments from both parties about the production of discovery. At

---

[1] La. C.C.P. art. 1471 provides:

A. If a party or an officer, director, or managing agent of a party or a person designated under Article 1442 or 1448 to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under Article 1464 or Article 1469, the court in which the action is pending may make such orders in regard to the failure as are just, including any of the following:

(1) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order.

(2) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence.

(3) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a final default judgment against the disobedient party upon presentation of proof as required by Article 1702.

(4) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination.

(5) Where a party has failed to comply with an order under Article 1464, requiring him to produce another for examination, such orders as are listed in Subparagraphs (1), (2), and (3) of this Paragraph, unless the party failing to comply shows that he is unable to produce such person for examination.
*** 

C. In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

3

the conclusion of the hearing, with all parties present, the trial court ordered Mr. Palmer to produce discovery responses no later than September 28, 2015, and rendered a written judgment ordering same on September 24, 2015. The trial court also ordered Mr. Palmer and Decatur Hotels to pay $250 in attorney's fees and court costs to Mr. Quinn. Mr. Palmer did not seek a new trial, file a nullity action, or appeal this ruling.

On February 26, 2016, the parties entered into a consent judgment and orally entered the stipulations into the record of the trial court. The stipulations provided: (1) that Mr. Quinn held a sixty percent interest in Decatur and that Mr. and Mrs. Palmer each held a twenty percent interest; (2) that all decisions regarding the management of Decatur would be decided in accordance with the operating agreement; and (3) that the parties would contribute to the costs associated with running the business and renovating the La Gallerie Hotel in accordance with their ownership interest in the business.

Over the course of the next three and a half years, the parties appeared before the trial court several times regarding Mr. Palmer's alleged failure to abide by the September 24, 2015 judgment ordering him to produce discovery and the February 26, 2016 consent judgment on Mr. Palmer's financial contributions to Decatur and the La Gallerie Hotel. On numerous occasions, Mr. Palmer was ordered again to comply with the judgments and was found in contempt for failing to do so. We discuss these hearings in detail as they are relevant to the issues raised in this appeal.

On July 1, 2016, Mr. Quinn filed his first motion for contempt of court and for sanctions and a second motion to compel discovery, alleging that Mr. Palmer had failed to comply with the court's September 24, 2015 judgment ordering him

4

to produce discovery and he intentionally violated the terms of the February 26, 2016 consent judgment. Specifically, Mr. Quinn alleged that Mr. Palmer and Decatur had not produced the supplemental responses to discovery—including email correspondence that had been requested—despite Mr. Quinn's numerous amicable requests. Mr. Quinn also alleged that Mr. Palmer owed $59,555 for the operations of the hotel and an additional $40,000 for the hotel's roof repair, which Mr. Palmer refused to pay, despite the consent judgment of February 26, 2016. Mr. Quinn further alleged that Mr. Palmer refused to execute the consent judgment to which he agreed on February 26, 2016, which prevented a written form of the judgment from being signed by the trial court. Mr. Quinn asked that Mr. Palmer and Decatur be compelled to provide discovery responses, and be held in contempt and sentenced to jail time, as well as sanctioned in the form of ordering him to pay attorney's fees and costs.

The parties appeared before the trial court on August 11, 2016, on Mr. Quinn's first rule for contempt of court and sanctions and second motion to compel discovery. The record reflects that, during the hearing, when the trial court questioned Mr. Palmer about why he refused to execute the consent judgment, Mr. Palmer stated that he was refusing to sign the consent judgment because he did not have the money to pay his share of the costs for the operations and renovations for the hotel. However, Mr. Palmer agreed to sign the consent judgment and abide by its terms at the close of the hearing.

For reasons unclear from the record, a second hearing on Mr. Quinn's motion for contempt of court and motion to compel discovery was held on August 25, 2016. By written judgment rendered September 29, 2016, the trial court found Mr. Palmer in contempt of court for failing to abide by the February 26, 2016

5

consent judgment and ordered him to pay $139,027.90 as per the terms of the consent judgment. The trial court further ordered Mr. Palmer to pay an additional $1,000 in attorney's fees and costs to Mr. Quinn for the contempt and his intentional failure to contribute to the costs of the hotel as per the consent judgment. The trial court also granted Mr. Quinn's second motion to compel discovery, ordered Mr. Palmer to provide responses within ten days of the judgment, and ordered Mr. Palmer to pay $750 in attorney's fees and costs associated with bringing the motion to compel. Mr. Palmer did not appeal this judgment.

On November 21, 2016, Mr. Quinn filed a second motion for contempt of court and request for sanctions, alleging that Mr. Palmer had failed to comply with the trial court's September 29, 2016 judgment ordering him to produce discovery, pay attorney's fees and court costs, and pay $139,027.90 to Mr. Quinn for costs associated with operating and renovating the La Gallerie Hotel. Mr. Quinn requested that the trial court order Mr. Palmer to pay the judgment and the sanctions as ordered and produce the documents as ordered within seven days, or be placed in jail until Mr. Palmer complied with the judgment. Mr. Quinn further requested additional attorney's fees and costs.

After being properly noticed to appear, the parties appeared before the trial court a fourth time on December 16, 2016 on Mr. Quinn's second motion for contempt of court and request for sanctions. The record reflects that, at the hearing, counsel for Mr. Palmer stated that he "did not know what to say" to Mr. Quinn's allegations that Mr. Palmer had not complied with the judgments and he had "no knowledge of anything that Mr. Palmer has done to respond to the motion to contempt [or] for the sanctions regarding the judgment." After Mr. Palmer's

6

request to address the trial court personally was granted, Mr. Palmer informed the trial court that he "fully intended" to pay everything he owed when he had the money to pay it, yet admitted, after questioning from the trial court, that he had other lucrative sources of income with which to pay the judgment. The trial court then gave Mr. Palmer ten days to make a reasonable payment toward the judgment and produce the discovery responses or Mr. Palmer would be jailed. The trial court also warned Mr. Palmer that if he did not comply with producing the discovery responses as ordered, the trial court would strike all of his defenses.

Following the hearing on December 16, 2016, after Mr. Palmer had not complied with the court's orders to produce discovery and make a reasonable payment toward the hotel costs within ten days, Mr. Quinn filed a third motion for contempt of court and an Expedited Motion to Incarcerate on December 27, 2016. On January 27, 2017, Mr. Palmer and Decatur opposed the motion, arguing that he had paid $32,352.95 toward the judgment and that he had tried to produce the discovery requested to Mr. Quinn, but the documents were voluminous and recovery of the documents "will take time and will be expensive."

The hearing on Mr. Quinn's third motion for contempt was held on February 2, 2017. The trial court again found that Mr. Palmer and Decatur had not complied with the court's order to produce discovery or make reasonable payments toward the costs of running and renovating the hotel. Regarding the discovery, counsel for Mr. Palmer and Decatur stated that he had tried to comply with the court's order to produce the discovery, but that Mr. Palmer was not cooperative with him because he kept cancelling scheduled meetings. He also noted that Mr. Palmer threatened him with a bar complaint. Regarding the judgment ordering Mr. Palmer to pay $139,027.90 for the La Gallerie Hotel operations and renovations, the trial court

noted that Mr. Palmer had not paid the judgment and asked if Mr. Palmer wanted to assign some of his ownership interest in the company to Mr. Quinn to satisfy the judgment, which Mr. Palmer declined to do. The trial court then jailed Mr. Palmer until he paid the judgment.

Thereafter, on February 6, 2017, Mr. Palmer filed a motion for new trial; and the motion was heard February 7, 2017. After the hearing, the trial court issued a written judgment releasing Mr. Palmer from jail and ordering him to produce emails responsive to Mr. Quinn's discovery requests within thirty days. Mr. Palmer did not seek supervisory review of this judgment.

In early 2018, new counsel for Mr. Palmer and Decatur enrolled in the case. On March 21, 2018, the trial court issued a second pre-trial notice, setting the matter for trial on October 22, 2018. The pre-trial notice was again signed by all parties and their counsel and again provided that if the court finds that a party failed to comply with a pre-trial order, "the court, on its own motion, or on the motion of a party, after hearing, may make such orders as are just, including orders provided in [La. C.C.P.] art. 1471 (2), (3), and (4)."

On July 18, 2018, Mr. Quinn filed a third motion to compel and a fourth motion for contempt of court and for sanctions, alleging that Mr. Palmer had failed to comply with the trial court's September 24, 2015 judgment ordering him to produce discovery responses and pay all costs, attorney's fees, and sanctions. Mr. Quinn alleged that, since Mr. Palmer's new counsel enrolled, a discovery conference pursuant to Rule 10.1 of the Rules for Louisiana District Courts was held on March 7, 2018, and that Mr. Palmer's counsel committed to produce discovery by May 1, 2018, but did not.

8

Mr. Quinn alleged that Mr. Palmer and Decatur instead produced 5,123 pages of receipts that supported Mr. Palmer's claim for offset, but Mr. Quinn contended that there was not enough detail to know if they actually did. Mr. Quinn alleged that none of the items Mr. Palmer had been previously ordered to produce, specifically the email correspondence, had been produced. In response, Mr. Palmer and Decatur filed a "Motion for Productive Lawyering," arguing that holding a hearing on Mr. Quinn's motion to compel, for contempt and for sanctions is "an exercise in "_déjà vu_ all over again"" and would "not advance the case." (emphasis in original).

On July 26, 2019,[2] after proper notice was issued to the parties, the trial court heard Mr. Quinn's third motion to compel and fourth motion for contempt of court and for sanctions. During the hearing, counsel for Mr. Palmer and Decatur stated he asked Mr. Quinn's lawyers what discovery they sought a year before in July 2018, and that he was entitled to meet with Mr. Quinn's lawyers to find out "why they need what they need." He also stated, as did Mr. Palmer's prior counsel in 2015, that the requests are not specific enough, and that the request for the email correspondence for Mr. Palmer's personal emails going back "several years" is "a witch hunt" and "is not necessary." Mr. Quinn thereafter made an oral motion to strike Mr. Palmer's pleadings as a sanction for the discovery violations.

The trial court found that Mr. Palmer and Decatur were in contempt of court for failure to follow its previous rulings regarding the production of discovery responses. The trial court further ordered that, "due to the contempt of court" any and all of Mr. Palmer's and Decatur's defense and offset claims and reconventional

---

[2] The delay in hearing Mr. Quinn's July 18, 2018 motion to compel was caused due to Mr. Palmer's attempts to remove the instant matter to federal court. The matter was remanded back to state court on June 24, 2019.

demand claims be stricken from the record. Finally, the trial court ordered that Mr. Palmer and Decatur pay Mr. Quinn $1,000 in attorney's fees and costs associated with bringing their motions to compel and for contempt of court. Mr. Palmer and Decatur now appeal.

**DISCUSSION**

Though they make no statement of issues presented to this court, Mr. Palmer and Decatur assert one assignment of error: that the trial court erred in coupling a "previous contempt judgment which was a legal nullity" with a finding that Mr. Palmer had not complied with orders to produce discovery, which was "patently wrong." They then argue that the ruling was "constitutionally infirm," and cite *Long v. Hutchins*, 40,548, p. 2 (La. App. 2 Cir. 12/14/05), 926 So.2d 556, 558, in support of this argument, presumably referring to the February 2, 2017 hearing where Mr. Palmer was remanded to jail. They do not state, however, which constitutional violations allegedly occurred at the contempt of court hearing on July 26, 2019 that is the subject of the instant appeal, nor do they state why the trial court's previous finding of contempt was a legal nullity or why the trial court's finding that Mr. Palmer had not complied with orders to produce discovery was wrong.

Mr. Quinn counters that the trial court did not abuse its discretion in finding Mr. Palmer in contempt for failing to abide by its order to produce discovery or in ordering that his pleadings be stricken as a sanction for the failure to produce discovery. Mr. Quinn argues that Mr. Palmer failed to produce discovery responses after appearing before the court six times over four years and being ordered to produce the discovery responses several times.

10

At the outset, we address Appellants' arguments regarding the hearing on February 2, 2017, wherein Mr. Palmer was found in contempt of court and remanded to jail for failure to produce discovery responses and abide by the consent judgment he entered into with Mr. Quinn on February 26, 2016. A review of the record shows that no timely appeal was filed as a result of the trial court's order. Mr. Palmer also could have sought appellate review of the trial court's denial of his motion for new trial, or sought relief in the trial court by filing an action to nullify the judgment. He took none of these actions.[3] Therefore, we do not have jurisdiction to review the trial court's order from that hearing and will not address it here.

Therefore, the relevant issues on appeal are (1) whether the trial court erred in finding Mr. Palmer in contempt of court for failing to produce court-ordered discovery responses; and (2) whether the trial court erred in striking Mr. Palmer's pleadings as a sanction for failing to produce court-ordered discovery responses.

**Contempt of Court**

Contempt of Court is committed when there is "any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority." La. C.C.P. art. 221. "[I]t is well-settled jurisprudence that district courts have the power to punish for contempts, and this power reaches both conduct before the court, and that beyond the court's confines." *DeGruy v. DeGruy*, 1998-1416, p. 10 (La. App. 4 Cir. 1/27/99), 728

---

[3] An appeal from the denial of the motion for new trial and as well as an action to nullify the February 2, 2017 contempt judgment would both be prescribed. *See* La. C.C.P. art. 2087 and 2123 (the delays for taking a suspensive or devolutive appeal are thirty or sixty days, respectively, which commence to run on the expiration of the delay for filing a motion for new trial, for judgment notwithstanding the verdict, or the date of mailing the notice of the trial court's refusal to grant a new trial or judgment notwithstanding the verdict); La. C.C.P. art. 2004 ("[a]n action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action.")

So.2d 914, 919 (citing *Estate of Graham v. Levy*, 1993-0636, 1993-0134, (La. App. 1 Cir. 4/8/94), 636 So.2d 287). "The authority to punish for contempt of court falls within the inherent power of the court to aid in the exercise of its jurisdiction and to enforce its lawful orders." *In re Succession of Horrell*, 2007-1533, p. 12 (La. App. 4 Cir. 10/1/08), 993 So.2d 354, 365 (quoting *de Nunez v. Bartels*, 1997-1384, p. 13 (La. App. 1 Cir. 9/9/98), 727 So.2d 463, 470, in turn citing *In re Merritt*, 391 So.2d 440, 442 (La. 1980)) (internal quotation marks omitted).

To that end, there are two types of contempt of court: direct contempt and constructive contempt. La. C.C.P. art. 221. Direct contempt is committed "in the immediate view and presence of the court and of which it has personal knowledge, or a contumacious failure to comply with a subpoena or summons, proof of service of which appears of record." La. C.C.P. art. 222. Constructive contempt of court is "any contempt other than a direct one." La. C.C.P. art. 224. Constructive contempt of court also includes "[w]illful disobedience of any lawful judgment, order, mandate, writ, or process of the court." La. C.C.P. art. 224(2).

La. C.C.P. art. 225 sets forth the procedures for punishing a party who is in constructive contempt of court:

> A.   Except as otherwise provided by law, a person charged with committing a constructive contempt of court may be found guilty thereof and punished therefor only after the trial by the judge of a rule against him to show cause why he should not be adjudged guilty of contempt and punished accordingly. The rule to show cause may issue on the court's own motion or on motion of a party to the action or proceeding and shall state the facts alleged to constitute the contempt.
>
> B.   If the person charged with contempt is found guilty the court shall render an order reciting the facts constituting the contempt, adjudging the person charged with contempt guilty thereof, and specifying the punishment imposed.

12

La. C.C.P. art. 227 provides that the prescribed punishments for a party adjudged guilty of contempt of court are stated in La. R.S. 13:4611, which allows a court to fine the party up to five hundred dollars for being in contempt and award attorney's fees to the prevailing party in the contempt proceeding.

"A court's finding that a person willfully disobeyed a lawful judgment in violation of La. C.C.P. art. 224(2) must be based on a finding that the accused violated an order of the court 'intentionally, purposely, and without justifiable excuse.'" *State through Dep't of Children & Family Servs. Child Support Enf't v. Knapp*, 2016-0979, p. 13 (La. App. 4 Cir. 4/12/17), 216 So.3d 130, 140 (citing *Burst v. Schmolke*, 2010-1036, p. 6 (La. App. 4 Cir. 4/6/11), 62 So.3d 829, 833 (internal citation omitted)). "The trial court is vested with great discretion in determining whether a party should be held in contempt for disobeying a court order and the court's decision should be reversed only when the appellate court discerns an abuse of that discretion." *Id.* at pp. 13-14, 216 So.3d at 140.

Mr. Palmer and Decatur are alleged to have committed constructive contempt of court. That is, they are alleged to have violated the trial court's September 24, 2015 order to produce discovery—and the trial court's numerous subsequent orders to produce discovery since the September 24, 2015 judgment. The record reflects that the trial court did not abuse its discretion in finding Mr. Palmer and Decatur in contempt of court.

The record reflects that Appellants were made aware on numerous occasions over four years, both orally in open court and in writing through the filing of various motions to compel and for contempt, of Mr. Quinn's allegations regarding Mr. Palmer's and Decatur's failure to produce discovery. Appellants consistently failed to produce the discovery they were ordered to produce for almost four years,

13

which supports a finding that the violation of the order to produce discovery was intentional and purposeful.

The record further reflects that the trial court properly noticed the hearing date for Appellants to appear and show cause why they should not be held in contempt on July 26, 2019, and that Mr. Palmer and Decatur were properly served with this notice through their counsel of record. Finally, the record reflects that Appellants were given an opportunity to be heard on the allegations of contempt at the July 26, 2019 hearing. Appellants did not produce any evidence or justification for the failure to comply with the discovery orders of the trial court, nor did they offer any evidence that they had complied with the order. Appellants merely argued, both orally and through written motions, that holding them in contempt was "not productive" to the case and that they were entitled—though they cite no justification for this proposition—to meet with Mr. Quinn's attorneys in order for Mr. Quinn to justify what documents they needed and why they needed them, and that this meeting had not taken place, despite requests. At all of the hearings on the motion to compel discovery, as well as the most recent motion for contempt, Appellants produced no evidence of a justifiable reason why they have failed to produce the discovery they were ordered to produce.

Appellants' recourse in challenging an order to produce discovery with which they disagree is not to disobey the order. *See Dauphine v. Carencro High Sch.*, 2002-2005, p. 13 (La. 4/21/03), 843 So.2d 1096, 1106-07 ("[O]rders of the trial judge…must be obeyed, irrespective of the ultimate validity of the order…[and] [t]he correctness of a court order or ruling is not contested by deciding to willfully disobey it, without suffering the consequence of that disobedience") (internal citations omitted). Even assuming Appellants are correct

14

that the trial erred in its original order to produce discovery, Appellants are not at liberty to disobey the order. Instead, Appellants could have asked the trial court to reconsider its ruling to produce discovery in 2015, filed a motion for new trial on the discovery order, or sought supervisory review of the discovery order. Appellants did none of these, and the time delays for exercising these recourses have long since passed. Therefore, we find the trial court did not abuse its discretion in finding Mr. Palmer in contempt of court.

**Discovery Sanctions**

Next, we consider whether the trial court abused its discretion in striking Mr. Palmer's and Decatur's defense, offset, and reconventional demand claims for failure to comply with the court's order to produce discovery. We find that the trial court did not abuse its discretion.

La. C.C.P. art. 1471 allows a trial court to make any orders which are just to address the failure of a party to provide or permit discovery, including striking out pleadings or parts thereof, dismissing the action, or treating the failure to obey the trial court's orders as a contempt of court. La. C.C.P. art. 1551 further allows a trial court to, in its discretion, control and schedule discovery and the form or forms in which it should be produced. La. C.C.P. art. 1551(C) directs that "[i]f a party's attorney fails to obey a pretrial order, or…fails to participate in good faith, the court, on its own motion or on the motion of a party, after hearing, may make such orders as are just, including orders provided in Article 1471 (2), (3), and (4)."

A trial court's exercise of its discretion, under La. C.C.P. arts 1471 and 1551(C), to strike a party's pleadings or claims as a sanction for disobeying pretrial orders, is considered a "death penalty" that "should seldom be imposed and should be reserved for only the most flagrant case." *Benware v. Means*, 1999-1410, p. 8

(La. 1/19/00), 752 So.2d 841, 846. "Each case must be decided upon its own facts and circumstances, and the trial judge is vested with much discretion in determining the penalty for violation of pre-trial or discovery orders." *Id.*, 1999-1410 at p. 9, 752 So.2d at 847.

In making a case-by-case determination of the appropriate sanction for violating a pretrial scheduling order, the following four factors must be considered: "(i) whether the attorney, the client, or both committed the misconduct; (ii) the stage of the proceeding at which the violation occurred; (iii) the presence or absence of prejudice to the opposing party's preparation of the case; and (iv) the nature and persistency of the misconduct that constitutes the violation." *Winding v. Bryan*, 2014-0388, pp. 9-10 (La. App. 4 Cir. 9/17/14), 148 So.3d 956, 961-62 (citing *Benware*, 1999-1410 at pp. 9-10, 752 So.2d at 847).

The first factor considers who committed the misconduct—the attorney, the client, or both. "Dismissal is a draconian penalty generally reserved for those cases in which the client, as well as the attorney, was at fault." *Winding*, 2014-0388 at p. 10, 148 So.3d at 962. *See also Horton v. McCary*, 1993-2315, p. 10 (La. 4/11/94), 635 So.2d 199, 203.

Here, the first factor weighs in favor of striking of Appellants' pleadings. The record reflects that both counsel for Appellants as well as Appellants themselves have obstructed or outright violated the court's pretrial orders on discovery. As the trial court noted in its hearings on December 16, 2016; February 2, 2017; and, finally, on July 26, 2019, Mr. Palmer has been given multiple opportunities to comply with the trial court's order to produce discovery over four years. The record reflects that Mr. Palmer was personally made aware by the trial court on at least two occasions that the trial court could strike Appellants'

16

pleadings if they did not comply with the discovery order. Appellants' counsel noted in 2017 that even he had trouble communicating with Mr. Palmer or gaining his compliance with the orders. Appellants and both of their attorneys of record signed two different pre-trial scheduling orders where the trial court made each of them aware that, if necessary, it would exercise its discretion under La. C.C.P. art. 1471 if they were found to have violated the trial court's pre-trial orders. Mr. Palmer, Decatur, and their current counsel have not made efforts to comply with the trial court's order to produce discovery. Instead, Appellants and their counsel have continued to insist to the trial court and to this court that Mr. Quinn is not entitled to the discovery they were already ordered to produce or that Mr. Quinn should be made to justify why he seeks the discovery Appellants were ordered to produce.

The second factor considers the stage at which the violation occurred and, again, heavily weighs in favor of striking Appellants' pleadings as a sanction for their failure to comply with the trial court's order to produce discovery. The record reflects that this matter was instituted in 2013 and has been set for trial twice: once on February 1, 2016 and again on October 22, 2018. The record reflects that, to this day, the matter has not proceeded to trial. Appellants' violation of the discovery orders first occurred in September 2015, over two years after the matter was instituted and after the matter had been set for trial. The record reflects that Appellants still have not complied with the trial court's orders to produce discovery at this late stage in the proceeding.

The third factor considers the prejudice that the violation has caused the other party. The documents that Mr. Quinn seeks include email correspondence between Mr. Palmer and persons or entities allegedly related to Mr. Palmer's

17

operation of Decatur; documents from the sale and lease of other properties related to Mr. and Mrs. Palmer and Decatur; tax returns and profit and loss statements for Decatur from 2013 to present; Mr. Palmer's personal tax returns from 2014-16; monthly bank statements and cancelled checks for the Palmers' bank accounts wherein money related to Decatur was paid or received; an accounting of all monies spent on improvements to the La Gallerie Hotel from January 2012 to February 2016; and an accounting of all monies and labor used to create the Palmers' privately-owned art gallery and on the Palmers' personal property. Mr. Quinn contends these documents go directly to the merits of his claims against Mr. Palmer that Mr. Palmer mismanaged Decatur and used monies from Decatur for his personal use without first gaining authorization from the other partners in the business, in violation of the operating agreement. Mr. Quinn has represented that Mr. Palmer's refusal to produce these items after being ordered to do so for almost four years has hindered his ability to prepare his case for trial. It has also hindered Mr. Quinn's ability to comply with the trial court's pre-trial scheduling order requiring Mr. Quinn to identify witnesses and exhibits to be used at trial because Mr. Palmer has failed to turn over discovery that is necessary for Mr. Quinn to make that determination. Presumably, Mr. Palmer's refusal to comply with the trial court's discovery order has also contributed to the reasons why Mr. Quinn has yet to adjudicate his claims at trial. Mr. Quinn has been greatly prejudiced by Appellants' violations of the pre-trial order, and this factor supports the trial court's exercise of discretion in striking Mr. Palmer's pleadings.

Finally, the nature and consistency of the conduct that constitutes the violation of the pre-trial order especially weighs in favor of striking Mr. Palmer's pleadings. The record reflects that, after Mr. Quinn filed his first motion to compel

discovery, Appellants were ordered to produce discovery by September 28, 2015. Since that time, Appellants have been ordered to appear before the trial court to address their failure to comply with the trial court's order to produce discovery on six other occasions over the following four years: August 11, 2016; August 25, 2016; December 16, 2016; February 2, 2017; February 7, 2017; and, finally, July 26, 2019. At each of these settings, Appellants were made aware of the trial court's order and the time within which they must comply. Appellants have not provided a justifiable reason why discovery has not been produced, and still continue to maintain that Mr. Quinn is not entitled to the discovery he seeks or that Mr. Quinn should justify—to Appellants' satisfaction—why Mr. Quinn needs the discovery. This supports the trial court's conclusion that the violation of the order was willful, and that Appellants have consistently continued to violate the order, despite being warned both orally and in writing that the trial court would strike Appellants' pleadings if they did not comply. All four factors support the trial court's ruling to strike Mr. Palmer's and Decatur's defense, offset, and reconventional claims; and the trial court did not abuse its discretion in striking them. Therefore, the ruling of the trial court is affirmed.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed.

**AFFIRMED**